**Mark STINSON, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2011–SC–000615–DG.**

Supreme Court of Kentucky.

April 25, 2013.

Matthew Ryan Malone, Jacob Kenneth Michul, Hurt, Crosbie & May PLLC, Lexington, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Heather Michelle, Fryman Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant was indicted for first-degree sexual abuse under KRS 510.110(1)(d) and subsequently entered a conditional *Alford* guilty plea while reserving his right to appeal the trial court's judgment. The Court of Appeals affirmed the trial court's decision and we granted discretionary review. Appellant makes three arguments in support of his appeal: (1) that "lack of consent" is an element of first degree sexual abuse under KRS 510.110(1)(d), (2) that KRS 510.110(1)(d) is unconstitutionally vague, and (3) that KRS 510.110(1)(d) is unconstitutionally overbroad. For the reasons set out below, we affirm the Court of Appeals' decision.

## I. BACKGROUND

Seventeen-year-old "Betty"[1] spent the summer of 2009 living with Appellant, her uncle by marriage, in his home. That summer, Appellant subjected Betty to sexual contact. When Betty's parents learned of the events, they contacted Kentucky authorities and Appellant was subsequently indicted for first-degree sexual abuse under KRS 510.110(1)(d).

Before Appellant's trial, he moved the trial court to find as a matter of law that "lack of consent" was an element of KRS 510.110(1)(d) and also moved the court to dismiss the indictment, arguing that KRS 510.110(1)(d) was vague and overbroad. After the trial court's denial of Appellant's motions, he entered a conditional guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In accordance with his plea, Appellant admitted that he did indeed engage in sexual contact with Betty, but maintained that the act was consensual and reserved the right to appeal the trial

---

1. "Betty" is a pseudonym employed in this opinion to protect the child's true identity.

court's rulings on his prior motions. Appellant was sentenced to one year's imprisonment.

On appeal, the Court of Appeals upheld the judgment of the trial court, finding that "lack of consent" was not an element of first-degree sexual abuse under KRS 510.110(1)(d) and that the statute was not vague or overbroad. We granted discretionary review and now affirm, albeit for different reasons. While we fully agree with the Court of Appeals that the statute is neither vague nor overbroad, we disagree with their conclusion that lack of consent is not an element of first-degree sexual abuse under KRS 510.110(1)(d). Rather, as detailed below, we hold that lack of consent is an element, and that it was satisfied by the fact that Betty was unable to consent, as she was under the age of eighteen and was subjected to sexual contact by Appellant, a person in a position of authority or special trust with whom she came into contact as a result of that position.

## II. ANALYSIS

Appellant was indicted for first-degree sexual abuse under KRS 510.110(1)(d), which states, in pertinent part:

> A person is guilty of sexual abuse in the first degree when:
>
> . . .
>
> Being a person in a position of authority or position of special trust, as defined in KRS 532.045, he or she, regardless of his or her age, subjects a minor who is less than eighteen (18) years old, with whom he or she comes into contact as a result of that position, to sexual contact. . . .

Appellant makes three arguments in support of his appeal. First, Appellant as-

serts that the Court of Appeals erred when it determined that "lack of consent" was not an element of KRS 510.110(1)(d). Second, Appellant argues, that KRS 510.110(1)(d) is unconstitutionally vague because it fails to properly define position of authority or position of special trust. Finally, Appellant asserts that KRS 510.110(1)(d) is unconstitutionally overbroad because it infringes upon his constitutionally protected right of privacy. We disagree as to all.

### A. Lack of Consent

 First, we must analyze KRS 510.110(1)(d) and KRS 510.020 to determine whether "lack of consent" is an element of KRS 510.110(1)(d). Our review in this instance is *de novo*. *See Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky. 2011) ("Because statutory interpretation is a question of law, our review is de novo; and the conclusions reached by the lower courts are entitled to no deference.") (internal citation omitted). Moreover, when interpreting the statutory scheme, we seek to effectuate the legislature's intent and "[t]he plain meaning of the statutory language is presumed to be what the legislature intended. . . .'" *Revenue Cabinet v. H.E. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (internal citation omitted).[2] "Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts." *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky.2011) (*citing MPM Financial Group, Inc. v. Morton*, 289 S.W.3d 193 (Ky.2009)).

Appellant argues that KRS 510.020 mandates that "lack of consent" be included as

---

2. *See also* KRS 446.080(1) ("All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature. . . .").

an element of the crime charged. In this regard, KRS 510.020(1) provides that: "Whether or not specifically stated, it is an element of every offense defined in this chapter that the sexual act was committed without consent of the victim." The victim's lack of consent can be shown in a traditional manner, such as by proof of forcible compulsion. *See, e.g.,* KRS 510.020(2)(a). However, lack of consent can by shown in other ways, such as by a victim's "[i]ncapacity to consent." KRS 510.010(2)(b). Ordinarily this circumstance is shown under KRS 510.020(3)(a), which reads in part: "[a] person is deemed incapable of consent when he or she is . . . [l]ess than sixteen (16) years old. . . ." However, when the "offense charged is sexual abuse," lack of consent can also result from "any circumstances in addition to forcible compulsion or incapacity to consent in which the victim does not expressly or impliedly acquiesce in the actor's conduct." KRS 510.020(2)(c).

Plainly then, KRS 510.020 defines a person who is unable to consent as, among other things, someone under the age of sixteen, and this showing satisfies the element of lack of consent. But this statute also recognizes incapacity to consent from "any [other] circumstances" in which a victim does not expressly or impliedly consent. *Id.*

KRS 510.110(1)(d), which was added to the statute in 2008, defines a new category of first-degree sexual abuse that applies when a minor who is under *eighteen years of age* has been abused by a person in a position of special authority or position of special trust who came into contact with the minor by virtue of his or her "trustful" position. Absent the special circumstances mentioned, i.e., the trustful position of power over the minor, it contains no reference to lack of consent as an element of the crime. But, importantly, KRS 532.045(1)(b) defines a "[p]osition of special trust" as "a position occupied by a person in a position of authority who by reason of that position is able to exercise *undue influence over the minor.*" (Emphasis added.)

■ Notably there is tension between this new statute and the apparent requirement in KRS 510.020 that every sex offense have as an element a lack of consent. However, there is no question that the new provision requires as an element a showing that the victim was under age 18 and abused by a person in a position of authority or trust. The question is what this new showing does to the statutory scheme and the requirement of lack of consent.

Unlike the rest of KRS 510.110, subsection (1)(d) specifically avoids mentioning consent, and instead identifies a specific "trustful relationship," KRS 510.110(1)(d). This imported the idea of "undue influence" in KRS 532.045(1)(b), perhaps as an alternative to showing lack of consent. Thus, KRS 510.110(1)(d) and KRS 510.020 appear to be contradictory in regard to proof of lack of consent.

This new version of the abuse offense, therefore, could be read in multiple ways. First, it could be read to obviate the element of lack of consent, replacing it with the new element when appropriate. Second, it could be read as adding the new element on top of the requirement of showing lack of consent. Third, it could be read as providing a means of showing a lack of consent. The statute, therefore, is ambiguous.

■ In resolving statutory ambiguity, we must employ traditional tools of statutory construction in order to interpret the legislature's intent.

On this point, the fact that KRS 510.110(d) and KRS 532.045(1)(b) are also the more recent and the more specific

statements of the legislature—compared to KRS 510.010—is relevant.[3] *See Withers v. University of Kentucky,* 939 S.W.2d 340, 345 (1997) ("[W]here two statutes concern the same or similar subject matter, the specific shall prevail over the general." (internal citations omitted)); *Troxell v. Trammell,* 730 S.W.2d 525, 528 (Ky.1987) ("Our rule of statutory construction [is] that ... a later statute is given effect over an earlier statute...."). Thus, the later and more specific enactments should control.

The legislative history of KRS 510.110 is also helpful. In 2008, KRS 510.110 was amended to define the crime of first-degree sexual abuse when the defendant was in a position of special authority or position of special trust. In fact, prior to its approval, Representative Jim Wayne stated, in front of both the House and Senate's Judiciary Committees, that one of the purposes of the proposed amendments to KRS 510.110(1)(d) was to change the ages for first-degree child sexual abuse from sixteen up to eighteen when the perpetrator is in a position of authority or special trust.[4] And, a psychologist testified before the Senate Judiciary Committee on the need to protect children *throughout their high school careers* from abusers in positions of authority or positions of special trust.[5] Given this history, it was undoubtedly the intent of the legislature to broaden first-degree sexual abuse to include abuse of a minor *under the age of 18* by a person in a position of special authority or trust.

This then leads to the conclusion that of the three readings proffered above, only the third adequately accounts for both the language of all the statutes and the clear legislative intent in amending KRS 510.110. Nothing in the amendments suggests that the legislature intended to completely do away with the requirement of lack of consent; indeed, this element is the essence of sexual offenses, whether shown by affirmative proof of lack of consent or by incapacity to consent. Similarly, it appears that the legislature did not intend KRS 510.020(1) to re-impose "lack of consent" as an additional element under KRS 510.110(1)(d). Rather, the third approach, which reads KRS 510.110(1)(d) as a way of showing that the victim was incapable of consenting under the circumstances, is the best reading.

A review of KRS 510.110(1)(d)'s specific language also supports our conclusion. We note that first-degree sexual abuse is committed under KRS 510.110(1)(d) when an individual "in a position of authority or position of special trust *subjects* a minor who is less than eighteen (18) years old, with whom he or she comes into contact as a result of that position, to sexual contact...." (Emphasis added.) Here, the word "subjects" suggests a focus on the conduct of the person in the "trustful position" rather than on whether the minor under the age of eighteen was (or was not) a voluntary participant.

Further, the statute states that the sexual contact be "as a result of the perpetrator's "position of authority" or "position of

---

**3.** KRS 510.110(1)(d) was enacted on July 15, 2008, while KRS 510.020(1) and (3)(a) were enacted on January 1, 1975. Although KRS 510.020 has been amended in several particulars since, the language of KRS 510.020(1) and (3)(a) has remained unchanged. KRS 532.045(1)(b) was enacted on July 15, 1994.

**4.** Representative Wayne appeared before the House Judiciary Committee on February 20, 2008 and before the Senate Judiciary Committee on March 27, 2008. The hearings can be found at http://www.ket.org/legislature/archives.php?session=wgaos+009 (last visited January 20).

**5.** The psychologist was Shannon Waylon.

special trust." The statutory scheme, thus, specifically recognizes the effect of probable coercion arising out of the special relationship the perpetrator has with his victim, which necessarily disables the victim's resistance. *See* KRS 532.045(1)(b) (recognizing the ability of an individual in a position of authority to exercise undue influence over the youthful victim). Moreover, because undue influence or coercion is inherent in the type of relationship defined by the statute, it is practically impossible for a victim under these circumstances to effectively consent to the sexual contact. *See* KRS 510.020(2)(c). Quite simply, a person cannot effectively consent to an activity when they have been influenced or coerced into participation by the power of the inherently trustful relationship.

Essentially, under the amended statute, a minor cannot consent to sexual contact from a person who is in a position of special trust or authority. Such behavior is sexual abuse in the first degree, and does not require an additional showing of lack of consent. From our review and analysis, we believe this to have been the intent of the legislature in this instance. Every means of statutory construction leads us to this conclusion.

Thus, after reviewing the legislative history of KRS 510.110(1)(d), as well as the various other provisions involved, we find that "[t]he statute [was] intended to protect minors from exploitation regardless of whether their participation [would otherwise be deemed] voluntary." *Baker v. Commonwealth*, 103 S.W.3d 90, 94 (Ky. 2003) (internal citation omitted). Instead of being an additional element on top of the showing required by KRS 510.110(1)(d), the two showings are the same. Both concern consent.[6] We thus hold that "lack of consent" can be shown by the fact that the victim was under the age of 18 and was subjected to sexual contact by a person in a position of authority or special trust with whom he or she came into contact as a result of that position, and that the prosecution need not prove any additional lack of consent.

## B. Vagueness Doctrine

 Appellant next argues that KRS 510.110(1)(d) is unconstitutionally void for vagueness in violation of due process. "A statute is vague if 'men of common intelligence must necessarily guess at its meaning.'" *Tobar v. Commonwealth*, 284 S.W.3d 133, 135 (Ky.2009) (*quoting State Bd. For Elementary and Secondary Educ. v. Howard*, 834 S.W.2d 657, 662 (Ky.1992)). "To satisfy the void for vagueness doctrine[,] a statute must: 1) provide fair

6. This reading thus also avoids the perverse result of allowing a defendant to be convicted of both first-and third-degree sexual abuse when a lack of consent, aside from the victim's incapacity to consent under KRS 510.110(1)(d), can be shown. Under *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a defendant can be convicted of two crimes arising from the same course of conduct, as long as each statute "requires proof of an additional fact which the other does not." If KRS 510.110(1)(d) does not require proof of lack of consent, then the elements of first-degree sexual abuse under it are: (a) sexual contact (b) with a minor under the age of 18(c) by a person in a position of special trust or authority. The elements of third-degree sexual abuse, on the other hand, are (a) sexual contact and (b) lack of consent. *See* KRS 510.130(1). Each statute would have one element in common—sexual contact—but would also have an element that the other does not, which would allow conviction for both if the victim did not consent and was also under 18 and abused by a person in a position of trust or authority. By reading elements "under age 18" and "position of special trust or authority" as equaling incapacity to consent (and thus showing lack of consent) we avoid this result.

notice to those targeted by the statute, by containing sufficient definiteness so that ordinary people can understand what conduct is prohibited and 2) it must have been drafted in such a way to discourage arbitrary and discriminatory enforcement." *Tobar*, 284 S.W.3d at 135 (internal citation and quotation marks omitted).

Specifically, Appellant alleges that "position of authority" and/or "position of special trust" are not sufficiently defined by the statute. However, under KRS 510.110(1)(d), the terms "position of authority" and "position of special trust" are defined in KRS 532.045. Pursuant to KRS 532.045:

(a) "Position of authority" means but is not limited to the position occupied by a biological parent, adoptive parent, stepparent, foster parent, relative, household member, adult youth leader, recreational staff, or volunteer who is an adult, adult athletic manager, adult coach, teacher, classified school employee, certified school employee, counselor, staff, or volunteer for either a residential treatment facility, a holding facility as defined in KRS 600.020, or a detention facility as defined in KRS 520.010(4), staff or volunteer with a youth services organization, religious leader, health-care provider, or employer . . .

(b) "Position of special trust" means a position occupied by a person in a position of authority who by reason of that position is able to exercise undue influence over the minor. . . .

Clearly, Appellant, Betty's uncle, and the head of her household at the time, falls within these definitions. Appellant, however, does not argue that the statute is vague as applied to him—only that it is vague when applied in a variety of hypothetical scenarios not before this Court. As mentioned, Betty was living with Appellant (her uncle) in his home at the time

the two engaged in the aforementioned conduct and thus was a "household member."

■ However, the United States Supreme Court has stated that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975) (*citing United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963)). Here, KRS 510.110(1)(d) is wholly irrelevant to the First Amendment and as a result, we must analyze the actual facts of Appellant's case to determine whether the statute is vague as applied. Because the statute is plainly applicable to Appellant, he does not have standing to complain that the statute is unconstitutionally vague. *See Mazurie*, 419 U.S. at 550, 95 S.Ct. 710.

However, even were we to believe Appellant had standing, we hold that KRS 532.045's provisions defining position of special authority and position of special trust are not, as Appellant suggests, unconstitutionally vague. Contrary to Appellant's assertion, KRS 532.045 contains sufficient definiteness so that ordinary individuals may understand the conduct that has been prohibited by the legislature. Quite simply, the definitions of persons in positions of special authority and special trust utilize plain and ordinary language to lay out an extensive definition of who is included under the law. Further, the definition of person in a position of special authority addresses several nonexclusive categories of individuals who are in positions of special authority or special trust. It is clear from the language of the statute that the legislature undoubtedly intended to distinguish this type of relationship from one in which a minor is able to

exercise free will without the influence of an adult role model.

Further, contrary to Appellant's argument, KRS 510.110(1)(d) does sufficiently define the required connection between the defendant's trustful position and the sexual contact. Under the statute, the defendant must come into contact with the minor as a result of his trustful position. Appellant argues that it is not clear whether the alleged offender must (1) use his or her position of authority to initially meet the minor, (2) abuse the position at the time of the sexual contact, (3) happen to be around the minor because of the contact, (4) be in a position of authority at the time of the sexual contact, or (5) be merely classified as a person in a position of authority or special trust.

Contrary to Appellant's argument, we find that the statute contains sufficient definiteness to put the general public on fair notice as to the connection required. The necessary "contact" for the statute's application is merely *some* contact. It is inconsequential what type of contact is made so long as it is a result of the trustful relationship and eventually leads to sexual contact between the person in the trustful relationship and his or her victim. Thus, Appellant's argument is without merit.

In conclusion, the statute contains sufficient definiteness to put those targeted by the statute on notice and does not encourage arbitrary or discriminatory enforcement. Thus, even if Appellant had standing to make his vagueness challenge, his argument would be without merit.

### C. Overbreadth

Appellant next argues that KRS 510.110(1)(d) is unconstitutionally overbroad because it deters a substantial amount of lawful conduct. Specifically, Appellant asserts that the statute deters consensual sexual conduct between persons who are between the ages of sixteen and eighteen.

"The overbreadth doctrine generally involves a claim that in an effort to control proscribable conduct, a statute impermissibly reaches constitutionally permissible conduct." *Wilfong v. Commonwealth*, 175 S.W.3d 84, 96 (Ky.App.2004). However, again, the United States Supreme Court has stated that "outside the limited First Amendment context, a criminal statute may not be attacked as overbroad." *Schall v. Martin*, 467 U.S. 253, 268 n. 18, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). Here, Appellant argues that KRS 510.110(1)(d) infringes on his constitutionally protected 14th Amendment substantive due process right to privacy; specifically, his right to engage in a consensual sexual relationship with an adult.[7] *Lawrence v. Texas*, 539 U.S. 558, 578–89, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). Appellant has failed to challenge KRS 510.110(1)(d) on First Amendment grounds. Thus, again Appellant does not have standing to assert that the statute is overbroad.

However, even if Appellant did have standing to challenge the statute as overbroad, his argument still fails. Appellant asserts that the statute deters lawful (consensual) sexual contact between individuals who are sixteen years old. However, his argument is based on the assumption that a minor as defined by KRS 510.020 is someone who is under sixteen years old. KRS 510.020 does not purport to define minor. By contrast, KRS 510.110(1)(d) plainly defines a minor as someone under

---

7. Appellant asserts that Betty was an adult, as opposed to a minor, because she was seventeen years old. However, as we have stated,

KRS 510.110(1)(d) defines a minor as someone who is less than eighteen years old.

eighteen years of age when the perpetrator is in a position of special authority or special trust. Thus, the statute does not discourage legal conduct; rather, it redefines conduct that was once legal under the prior version of KRS 510.110, making said conduct now illegal—and for logical reasons.

Further, as stated, the statutes sufficiently define position of special authority or special trust such that a sixteen or seventeen year old in a position of special authority or trust is aware of what conduct he or she is prohibited from engaging in. *See* KRS 510.110(1)(d) ("Being a person in a position of authority or position of special trust, as defined in KRS 532.045, he or she, *regardless of his or her age,* subjects a minor who is less than eighteen (18) years old with whom he or she comes into contact as a result of that position, to sexual contact ....") (emphasis added). As a result, even if Appellant had standing to challenge the statute as overbroad, his argument is without merit.

## III. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals' decision.

MINTON, C.J., ABRAMSON, CUNNINGHAM, NOBLE and VENTERS, JJ., sitting. All concur. KELLER, J., not sitting.