OPINION OF THE COURT BY JUSTICE KELLER Big Sandy Regional Jail Authority (the Authority) sued the Lexington-Fayette Urban County Government (the Urban County Government) in district court seeking reimbursement for the cost of housing prisoners held pursuant to warrants issued by Fayette County courts. The district court found that the Urban County Government is entitled to sovereign immunity, and it granted the Urban County Government’s motion to dismiss. The Authority appealed to the circuit court, which affirmed, based on its finding that the county of arrest controls responsibility for incarceration costs. The circuit court did not address the issue of sovereign immunity, which it deemed moot. The Authority filed a motion for discretionary review before the Court of Appeals, a motion that Court denied. The Authority then sought discretionary review before this Court, which we granted. Having reviewed the record, we affirm the circuit court but for different reasons. I. BACKGROUND In the 1980s, the Kentucky Department of Corrections closed or threatened to close county jails in Johnson, Lawrence, Magoffin, and Martin Counties. In order to meet their statutory obligation to provide facilities for incarcerating prisoners, the four counties formed the Authority whose purpose was to construct and operate a regional jail, the Big Sandy Regional Detention Center (the Detention Center). The Authority consists of ten members. Each of the founding counties appoints two members, with Johnson County, the most populous of the counties, receiving an additional member. The final member is the Johnson County Jailer, because the Detention Center is in Johnson County. The Authority is an independent body, and the only input the founding counties have in the operation of the Detention Center is by way of appointment of the Authority’s members through the respective counties’ judge executives. The Authority has contracts with the state, the four founding counties, and Elliott and Morgan Counties to house their prisoners in the Detention Center. In exchange for housing those prisoners, the Authority is paid a per diem by the counties and the state, with the four founding counties paying a little less than the others. This per diem, along with a small amount from the Detention Center’s commissary, constitutes the entirety of the revenue available to operate the Detention Center. On March 21, 2013, the Authority filed suit against the Urban County Government in district court.[1] In its complaint, the Authority listed a number of prisoners who had been arrested by an officer from one of the four founding counties based on warrants issued by Fayette County courts. Although the Authority believed it had no contractual obligation to do so, the Authority agreed to house those prisoners in the Detention Center until officials from the Urban County Government could arrange for their transfer to an Urban County Government facility, The Authority considered those prisoners to be “Fayette County prisoners” and billed the.Urban County Government the per diem for each prisoner’s stay in the Detention Center. The Urban County Government refused to pay, which led to this action. The Urban County Government filed a motion to dismiss, and the Authority filed a motion for summary judgment. In its motion, the Urban County Government argued that it was immune from suit and, if not immune, the obligation to pay for the incarceration of prisoners falls on the arresting county, not on the. county that issued the warrant. In its motion, the Authority argued that the Urban County Government had a statutory obligation to pay for the incarceration of prisoners who were being held pursuant to a warrant issued by a Fayette County court. In its response to the Urban County Government’s motion, the Authority argued that the statute imposing the duty on counties to provide for the incarceration of prisoners waives immunity by implication. The district court found in favor of the Urban County Government and dismissed the Authority’s complaint. In doing so, the court determined that the Urban County Government is immune and that immunity had not been waived either explicitly or implicitly. The Authority appealed to the circuit court, which affirmed, based on its finding that the county of arrest controls responsibility for incarceration. The circuit court did not address the issue of sovereign immunity. On appeal, the Authority argues, as it did below, that Kentucky Revised Statute (KRS) 411.025 requires a county that issues an arrest warrant to provide for the incarceration of the prisoner arrested pursuant to that warrant, regardless of where the arrest occurs. The Urban County Government argues that KRS 411.025, when read in its entirety and in conjunction with other statutory provisions, requires the arresting county to provide for that incarceration, regardless of what county issued the arrest warrant. The Urban County Government also argues that it has immunity, which the Authority disputes. . II. STANDARD OF REVIEW Resolution of this appeal primarily requires us to undertake interpretation of a statute. The construction and application of statutes is a matter of law, which we review de novo, Bob Hook Chevrolet Isuzu, Inc. v. Com. Transp. Cabinet, 983 S.W.2d 488, 490 (Ky. 1998), without any deference to the interpretation afforded by the circuit court. Cinelli v. Ward, 997 S.W.2d 474, 476 (Ky, App. 1998) (citing Louisville Edible Oil Products, Inc. v. Revenue Cabinet Commonwealth of Kentucky, 957 S.W.2d 272 (Ky. App. 1997)). III. ANALYSIS A. Statutory Interpretation Í. KRS 441.025 When interpreting a statutory scheme, we seek to effectuate the legislature’s intent and “[t]he plain meaning of the statutory language is presumed to be what the legislature intended.” Stinson v. Commonwealth, 396 S.W.3d 900, 908 (Ky. 2013) (citing Revenue Cabinet v. H.E. O’Daniel 153 S.W.3d 815, 819 (Ky. 2005)). “The plain-meaning rule is consistent with directions provided by the legislature on how to interpret the statutes enacted by it.” Wheeler & Clevenger Oil Co., Inc. v. Washburn, 127 S.W.3d 609, 614 (Ky. 2004) (citing KRS 446.015; KRS 446.080(4)). “Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute’s legislative history; the canons of construction; or, especially in the ease of model or uniform statutes, interpretations by other courts.” Stinson, 396 S.W.3d at 903 (citing Shawnee Telecom Res., Inc. v. Brown, 354 S.W.3d 542, 551 (Ky. 2011)). KRS 441.025(1) states: “The fiscal court of each county shall provide for the incarceration of prisoners arrested in the county or sentenced or held by order of the courts in the county,” This statute is, at best, unclear, and, at worst, inapplicable. However, it is the only statute we have. Therefore, we must interpret it as best we can. The Authority argues that a county that issues a warrant for an individual is responsible for the costs of incarcerating that individual, even if an arrest occurs in another county. The Urban County Government argues that the county making the arrest is responsible for the costs of incarceration regardless of which county originated the charges or warrant necessitating the arrest. The Authority argues that, if the Urban County Government’s interpretation is correct, there is no reason for the second half of the sentence because the obligation would always fall on the arresting county. That argument is flawed. There are instances where a county, other than the arresting county, would be responsible for housing prisoners. For example, KRS 411.025 applies post-conviction to prisoners who have been sentenced by order of the courts in the county and to inmates held by order of the court as a result of a probation' violation. It also applies pre-conviction to inmates held by order of the courts pending trial. It would additionally apply to those held for contempt violations. However, the Authority’s argument that the county that issues a warrant is responsible for incarceration costs is equally, if not more, flawed. According to the Authority, the arresting county is only responsible for the incarceration of prisoners if the arresting county is also the county that issued the warrant for the prisoner. For this interpretation to be correct, the statute would require an “and” instead of an “or” and would have been written as: “The fiscal court of each county shall provide for the incarceration of prisoners arrested in the: county and sentenced or held by order of the courts in the’county.” A prisoner may be held pursuant to warrants from one county or multiple counties. The Authority’s argument does not account for such a situation. The Court believes that the correct interpretation begins and ends with the premise of possession and that a prisoner’s status flows from possession and control. Thus, the prisoners in this casé were prisoners of Johnson, Lawrence, Magoffin, and Martin counties because those counties had possession and control of thé prisoners via arrest. Once Johnson, Lawrence, Ma-goffin, and Martin counties relinquished the prisoners to Fayette County, Fayette County became responsible for the costs of incarceration because the prisoners would then be held by Fayette County pursuant to an order of the Fayette County courts. 2. Relying on possession and control in interpreting KRS 441.025 is consistent with the statutory scheme and criminal procedure practice. a. Statutory Scheme KRS 441 applies to the operation and management of county jails and assigns financial responsibility for those jails to each fiscal court. Each county is obligated to incarcerate its prisoners, an obligation that can be fulfilled by providing and maintaining a separate county-run jail or by contracting with another county or city to house the county’s prisoners. The General Assembly did not mandate that counties reimburse each other for the costs of housing prisoners held by order or judgment of another county. Had the General Assembly wanted to impose that obligation, it could have done so. The absence of any such statutory provision further supports our holding that the county with possession of the prisoner bears the cost. b. Criminal procedure practice We find additional support for our interpretation in the Kentucky Rules of Criminal Procedure. Kentucky Rule of Criminal Procedure (RCr) 3.02(1) states: An officer making an arrest under a warrant issued upon a complaint shall take the arrested person without unnecessary delay before a judge as commanded in the warrant. If the arrest is made.in a county other than that in which the warrant was issued and the arrested person is not taken as commanded in the warrant, the arrested person shall be taken before a judge of the county in which the arrest is made, who shall consider the defendant for release on personal recognizance and so release the arrested person or admit the arrested person to bail for his or her appearance before the proper judge.... If the offense is nonbailable, or if the person arrested is unable to give bail, the judge shall commit that person to jail and he or she shall be taken as commanded in the warrant within a reasonable time by an officer of the county in which it was issued. In other words, an arrested person must be taken without unreasonable delay before a judge if not delivered to the county issuing the warrant. Thus, the rule contemplates that the county of arrest has a responsibility for the prisoners in its possession, and as such, the county of arrest should bear the costs. The rule further provides for transportation of the prisoner to the county that issued the warrant. The Authority is concerned that there is no time limit during which a charging county must pick up and transport a prisoner who is arrested and held in another county. The Authority reasons that Fay-ette County will delay picking up its prisoners in Johnson County to avoid the costs of incarceration. There is not an established definition for “unreasonable delay;” however, the courts have held that 48 hours is not unreasonable, see County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), and some local court rules in the Commonwealth provide that the defendant will be arraigned no later than at the next regular motion hour. Ky R Knott Magoffin Cir. Ct. Crim. Cases 2(A). Thus, the county of arrest should release the prisoner or establish bail for the prisoner Within 48 to 72 hours. If not released, the prisoner will remain in the jail until the county issuing the warrant arranges for transportation, which must be done within a reasonable time. If the county issuing the warrant does not want the prisoner to go free, that county will arrange for transportation. Otherwise, it runs the risk that a judge in the arresting county will release the prisoner on bail. Law enforcement officers, and indeed elected county officials, should have an interest in the prosecution of the perpetrators of alleged crimes in their communities. Furthermore, prosecuting attorneys have an interest in the just resolution of alleged crimes committed in the counties from which they were elected. We understand and note the Authority’s concerns regarding undue delay and its potential fiscal impact. However, for the aforementioned reasons, this Court has confidence in the abilities of our various counties and their elected officials to cooperate in the orderly administration of justice. B. Contract Finally, it is undisputed that the Authority has contracts with the state, the four founding counties, and Elliott and Morgan Counties to house their prisoners in the Detention Center. The Authority has stated that it has no legal obligation to accept prisoners from the Urban County Government or from any other county with which it has not contracted. The Authority is correct to the extent that it is only responsible for housing prisoners brought to it by counties with which it has a contract. For example, the Authority is not required to accept prisoners who were arrested in Fayette County because the Authority does not have a contract with Fay-ette County and KRS 441.025 mandates Fayette County to provide for the incarceration of its prisoners. Certainly, the Authority can accept prisoners brought to it by other counties, but it does so at its own risk. As we have stated herein, law enforcement officials in the counties of Johnson, Lawrence, Magoffin, and Martin had an obligation to arrest these individuals who had outstanding warrants against them, and therefore, the Authority was obligated to accept these prisoners who were arrested by officers in those counties. The Authority is entitled to payment for its costs of housing these prisoners, an entitlement that comes through the Authority’s contract, which needs to be enforced against the appropriate counties. In this case, those counties are Johnson, Lawrence, Magoffin, and Martin which are obligated to pay the costs as the arresting counties. IV. CONCLUSION For the above reasons, we affirm the circuit court’s order because the Urban County Government was not responsible for the costs of incarcerating prisoners not in its possession. All sitting. Minton, C.J., Cunningham, Hughes and Keller, JJ., concur. Venters, J., concurs in result only by separate opinion which VanMeter, J., joins. Wright, J., dissents by separate opinion. . We note that the Authority initially named other counties but the Authority voluntarily dismissed those counties, choosing to proceed against only the Urban County Government. The Authority also initially filed suit in Johnson County district court but moved to transfer the action to Fayette County district court, a motion the Johnson County district court granted. Finally, we note that the Authority initially filed the action on the district court’s small claims docket but, without objection, the court transferred it to the regular docket.