RENDERED: NOVEMBER 2, 2017
TO BE PUBLISHED

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$ FINAL

2016-SC-000008-DG DATE 11/27/17 Kim Redmon, DC

BIG SANDY REGIONAL JAIL AUTHORITY                     APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2015-CA-001464-DR
FAYETTE CIRCUIT COURT
NOS. 13-C-08761 & 15-XX-00009

LEXINGTON-FAYETTE URBAN COUNTY                     APPELLEE
GOVERNMENT

**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING**

Big Sandy Regional Jail Authority (the Authority) sued the Lexington-Fayette Urban County Government (the Urban County Government) in district court seeking reimbursement for the cost of housing prisoners held pursuant to warrants issued by Fayette County courts. The district court found that the Urban County Government is entitled to sovereign immunity, and it granted the Urban County Government's motion to dismiss. The Authority appealed to the circuit court, which affirmed, based on its finding that the county of arrest controls responsibility for incarceration costs. The circuit court did not address the issue of sovereign immunity, which it deemed moot. The Authority filed a motion for discretionary review before the Court of Appeals, a motion

that Court denied. The Authority then sought discretionary review before this Court, which we granted. Having reviewed the record, we affirm the circuit court but for different reasons.

## I. BACKGROUND

In the 1980s, the Kentucky Department of Corrections closed or threatened to close county jails in Johnson, Lawrence, Magoffin, and Martin Counties. In order to meet their statutory obligation to provide facilities for incarcerating prisoners, the four counties formed the Authority whose purpose was to construct and operate a regional jail, the Big Sandy Regional Detention Center (the Detention Center).

The Authority consists of ten members. Each of the founding counties appoints two members, with Johnson County, the most populous of the counties, receiving an additional member. The final member is the Johnson County Jailer, because the Detention Center is in Johnson County. The Authority is an independent body, and the only input the founding counties have in the operation of the Detention Center is by way of appointment of the Authority's members through the respective counties' judge executives.

The Authority has contracts with the state, the four founding counties, and Elliott and Morgan Counties to house their prisoners in the Detention Center. In exchange for housing those prisoners, the Authority is paid a per diem by the counties and the state, with the four founding counties paying a little less than the others. This per diem, along with a small amount from the

2

Detention Center's commissary, constitutes the entirety of the revenue available to operate the Detention Center.

On March 21, 2013, the Authority filed suit against the Urban County Government in district court.[1] In its complaint, the Authority listed a number of prisoners who had been arrested by an officer from one of the four founding counties based on warrants issued by Fayette County courts. Although the Authority believed it had no contractual obligation to do so, the Authority agreed to house those prisoners in the Detention Center until officials from the Urban County Government could arrange for their transfer to an Urban County Government facility. The Authority considered those prisoners to be "Fayette County prisoners" and billed the Urban County Government the per diem for each prisoner's stay in the Detention Center. The Urban County Government refused to pay, which led to this action.

The Urban County Government filed a motion to dismiss, and the Authority filed a motion for summary judgment. In its motion, the Urban County Government argued that it was immune from suit and, if not immune, the obligation to pay for the incarceration of prisoners falls on the arresting county, not on the county that issued the warrant. In its motion, the Authority argued that the Urban County Government had a statutory obligation to pay

---

[1] We note that the Authority initially named other counties but the Authority voluntarily dismissed those counties, choosing to proceed against only the Urban County Government. The Authority also initially filed suit in Johnson County district court but moved to transfer the action to Fayette County district court, a motion the Johnson County district court granted. Finally, we note that the Authority initially filed the action on the district court's small claims docket but, without objection, the court transferred it to the regular docket.

3

for the incarceration of prisoners who were being held pursuant to a warrant issued by a Fayette County court. In its response to the Urban County Government's motion, the Authority argued that the statute imposing the duty on counties to provide for the incarceration of prisoners waives immunity by implication.

The district court found in favor of the Urban County Government and dismissed the Authority's complaint. In doing so, the court determined that the Urban County Government is immune and that immunity had not been waived either explicitly or implicitly. The Authority appealed to the circuit court, which affirmed, based on its finding that the county of arrest controls responsibility for incarceration. The circuit court did not address the issue of sovereign immunity.

On appeal, the Authority argues, as it did below, that Kentucky Revised Statute (KRS) 411.025 requires a county that issues an arrest warrant to provide for the incarceration of the prisoner arrested pursuant to that warrant, regardless of where the arrest occurs. The Urban County Government argues that KRS 411.025, when read in its entirety and in conjunction with other statutory provisions, requires the arresting county to provide for that incarceration, regardless of what county issued the arrest warrant. The Urban County Government also argues that it has immunity, which the Authority disputes.

4

## II. STANDARD OF REVIEW

Resolution of this appeal primarily requires us to undertake interpretation of a statute. The construction and application of statutes is a matter of law, which we review *de novo*, *Bob Hook Chevrolet Isuzu, Inc. v. Com. Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998), without any deference to the interpretation afforded by the circuit court. *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998) (citing *Louisville Edible Oil Products, Inc. v. Revenue Cabinet Commonwealth of Kentucky*, 957 S.W.2d 272 (Ky. App. 1997)).

## III. ANALYSIS

### A. Statutory Interpretation

### 1. KRS 441.025

When interpreting a statutory scheme, we seek to effectuate the legislature's intent and "[t]he plain meaning of the statutory language is presumed to be what the legislature intended." *Stinson v. Commonwealth*, 396 S.W.3d 900, 903 (Ky. 2013) (citing *Revenue Cabinet v. H.E. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005)). "The plain-meaning rule is consistent with directions provided by the legislature on how to interpret the statutes enacted by it." *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 614 (Ky. 2004) (citing KRS 446.015; KRS 446.080(4)). "Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts." *Stinson*,

396 S.W.3d at 903 (citing *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)).

KRS 441.025(1) states: "The fiscal court of each county shall provide for the incarceration of prisoners arrested in the county or sentenced or held by order of the courts in the county." This statute is, at best, unclear, and, at worst, inapplicable. However, it is the only statute we have. Therefore, we must interpret it as best we can.

The Authority argues that a county that issues a warrant for an individual is responsible for the costs of incarcerating that individual, even if an arrest occurs in another county. The Urban County Government argues that the county making the arrest is responsible for the costs of incarceration regardless of which county originated the charges or warrant necessitating the arrest. The Authority argues that, if the Urban County Government's interpretation is correct, there is no reason for the second half of the sentence because the obligation would always fall on the arresting county. That argument is flawed. There are instances where a county, other than the arresting county, would be responsible for housing prisoners. For example, KRS 411.025 applies post-conviction to prisoners who have been sentenced by order of the courts in the county and to inmates held by order of the court as a result of a probation violation. It also applies pre-conviction to inmates held by order of the courts pending trial. It would additionally apply to those held for contempt violations.

6

However, the Authority's argument that the county that issues a warrant is responsible for incarceration costs is equally, if not more, flawed. According to the Authority, the arresting county is only responsible for the incarceration of prisoners if the arresting county is also the county that issued the warrant for the prisoner. For this interpretation to be correct, the statute would require an "and" instead of an "or" and would have been written as: "The fiscal court of each county shall provide for the incarceration of prisoners arrested in the county **and** sentenced or held by order of the courts in the county." A prisoner may be held pursuant to warrants from one county or multiple counties. The Authority's argument does not account for such a situation.

The Court believes that the correct interpretation begins and ends with the premise of possession and that a prisoner's status flows from possession and control. Thus, the prisoners in this case were prisoners of Johnson, Lawrence, Magoffin, and Martin counties because those counties had possession and control of the prisoners via arrest. Once Johnson, Lawrence, Magoffin, and Martin counties relinquished the prisoners to Fayette County, Fayette County became responsible for the costs of incarceration because the prisoners would then be held by Fayette County pursuant to an order of the Fayette County courts.

**2. Relying on possession and control in interpreting KRS 441.025 is consistent with the statutory scheme and criminal procedure practice.**

**a. Statutory Scheme**

KRS 441 applies to the operation and management of county jails and assigns financial responsibility for those jails to each fiscal court. Each county

7

is obligated to incarcerate its prisoners, an obligation that can be fulfilled by providing and maintaining a separate county-run jail or by contracting with another county or city to house the county's prisoners. The General Assembly did not mandate that counties reimburse each other for the costs of housing prisoners held by order or judgment of another county. Had the General Assembly wanted to impose that obligation, it could have done so. The absence of any such statutory provision further supports our holding that the county with possession of the prisoner bears the cost.

### b. Criminal procedure practice

We find additional support for our interpretation in the Kentucky Rules of Criminal Procedure.

Kentucky Rule of Criminal Procedure (RCr) 3.02(1) states:

> An officer making an arrest under a warrant issued upon a complaint shall take the arrested person without unnecessary delay before a judge as commanded in the warrant. If the arrest is made in a county other than that in which the warrant was issued and the arrested person is not taken as commanded in the warrant, the arrested person shall be taken before a judge of the county in which the arrest is made, who shall consider the defendant for release on personal recognizance and so release the arrested person or admit the arrested person to bail for his or her appearance before the proper judge.... If the offense is nonbailable, or if the person arrested is unable to give bail, the judge shall commit that person to jail and he or she shall be taken as commanded in the warrant within a reasonable time by an officer of the county in which it was issued.

In other words, an arrested person must be taken without unreasonable delay before a judge if not delivered to the county issuing the warrant. Thus, the rule contemplates that the county of arrest has a responsibility for the prisoners in its possession, and as such, the county of arrest should bear the

8

costs. The rule further provides for transportation of the prisoner to the county that issued the warrant.

The Authority is concerned that there is no time limit during which a charging county must pick up and transport a prisoner who is arrested and held in another county. The Authority reasons that Fayette County will delay picking up its prisoners in Johnson County to avoid the costs of incarceration. There is not an established definition for "unreasonable delay;" however, the courts have held that 48 hours is not unreasonable, *see County of Riverside v. McLaughlin,* 500 U.S. 44 (1991), and some local court rules in the Commonwealth provide that the defendant will be arraigned no later than at the next regular motion hour. Ky R Knott Magoffin Cir. Ct. Crim. Cases 2(A). Thus, the county of arrest should release the prisoner or establish bail for the prisoner within 48 to 72 hours.

If not released, the prisoner will remain in the jail until the county issuing the warrant arranges for transportation, which must be done within a *reasonable time.* If the county issuing the warrant does not want the prisoner to go free, that county will arrange for transportation. Otherwise, it runs the risk that a judge in the arresting county will release the prisoner on bail. Law enforcement officers, and indeed elected county officials, should have an interest in the prosecution of the perpetrators of alleged crimes in their communities. Furthermore, prosecuting attorneys have an interest in the just resolution of alleged crimes committed in the counties from which they were elected. We understand and note the Authority's concerns regarding undue

9

delay and its potential fiscal impact. However, for the aforementioned reasons, this Court has confidence in the abilities of our various counties and their elected officials to cooperate in the orderly administration of justice.

## B. Contract

Finally, it is undisputed that the Authority has contracts with the state, the four founding counties, and Elliott and Morgan Counties to house their prisoners in the Detention Center. The Authority has stated that it has no legal obligation to accept prisoners from the Urban County Government or from any other county with which it has not contracted. The Authority is correct to the extent that it is only responsible for housing prisoners brought to it by counties with which it has a contract. For example, the Authority is not required to accept prisoners who were arrested *in* Fayette County because the Authority does not have a contract with Fayette County and KRS 441.025 mandates Fayette County to provide for the incarceration of its prisoners. Certainly, the Authority can accept prisoners brought to it by other counties, but it does so at its own risk. As we have stated herein, law enforcement officials in the counties of Johnson, Lawrence, Magoffin, and Martin had an obligation to arrest these individuals who had outstanding warrants against them, and therefore, the Authority was obligated to accept these prisoners who were arrested by officers in those counties. The Authority is entitled to payment for its costs of housing these prisoners, an entitlement that comes through the Authority's contract, which needs to be enforced against the appropriate counties. In this case, those counties are Johnson, Lawrence,

10

Magoffin, and Martin which are obligated to pay the costs as the arresting counties.

## IV. CONCLUSION

For the above reasons, we affirm the circuit court's order because the Urban County Government was not responsible for the costs of incarcerating prisoners not in its possession.

All sitting. Minton, C.J., Cunningham, Hughes and Keller, JJ., concur. Venters, J., concurs in result only by separate opinion which VanMeter, J., joins. Wright, J., dissents by separate opinion.

VENTERS, J., CONCURRING IN RESULT ONLY: I concur in the result reached by the Majority opinion, but I disagree with its reasoning. KRS 441.025(1) cannot answer the question before this Court because it was drafted and enacted by the legislature to perform an entirely different function. Wringing that statute to squeeze out an answer to the question before us is like shaking an apple tree hoping that a peach will fall out. It may be, as the Majority laments, the only statute we have; but it will never produce the fruit we need to resolve this dispute.

Like the clever image that simultaneously appears to be the silhouette of a vase or the silhouettes of two faces, KRS 441.025 when applied to this controversy is perfectly ambiguous; a riddle without a solution. However, when applied to its intended purpose, the statute performs perfectly well, and its meaning is perfectly clear and unambiguous.

11

I respectfully suggest that KRS 441.025(1) is simply inapplicable to the present controversy. We are loath to say that we have no law that governs this issue, but I find it preferable to accept the reality of that unappealing choice than to infuse that statute with meaning never put there by the legislature. As its title portends, KRS 441.025 simply places the fiscal responsibility for incarcerating local prisoners—those who have either been arrested in the county or committed to jail by a court in the county—on the county government rather than upon local municipalities or upon the state government. Each subsection of KRS 441.025 is devoted to that purpose, and that purpose is entirely consistent with the remaining provisions of KRS Chapter 441.

KRS 441.025(1) reads as follows: "The fiscal court of each county shall provide for the incarceration of prisoners arrested in the county or sentenced or held by order of the courts in the county." A less concise but grammatically equivalent restatement of the statute would read as follows:

> The fiscal court of each county shall provide for the incarceration of prisoners who have either been 1) arrested in the county or 2) sentenced or held by order of the courts in the county.

Plainly stated, county government ("the fiscal court") bears the fiscal responsibility for the incarceration of a person 1) arrested in that county; or 2) sentenced or held pursuant to the order of a court in that county. The prisoners that are the subject of the pending controversy fit equally within either category. They were arrested in counties served by the Big Sandy Regional Jail; and they were sentenced or held by orders of a court in Fayette

12

County. KRS 441.025 does not differentiate or prioritize the fiscal responsibility for incarceration in either circumstance. I see nothing in the language or grammatical structure of the statute that favors the county of arrest over the county of the court order, or vice versa. The statute cannot resolve the conflict we face because it was not written to allocate the responsibility of incarceration between competing counties; it only establishes that county governments, rather than cities or the state, must bear that burden.

Consequently, I would adhere to the general rule that in the absence of applicable statutes, common law principles are controlling. *See Kenton & Campbell Benev. Burial Ass'n v. Goodpaster*, 200 S.W.2d 120, 127 (Ky. 1946). Insofar as I can determine, there is no common law cause of action for a Kentucky county (or a regional entity standing in its place) housing a prisoner to recover its expenses from another county. I would therefore dismiss the claim of Big Sandy, leaving it holding the bag until the legislature fills the statutory gap with a solution of its choosing. Accordingly, I would affirm, as does the Majority opinion, albeit upon different grounds.

VanMeter, J., joins.

WRIGHT, J., DISSENTING: I respectfully dissent from the majority's interpretation of KRS 441.025(1). The statute reads: "[t]he fiscal court of each county shall provide for the incarceration of prisoners arrested in the county or sentenced or held by order of the courts in the county." I point out that, in construing a statute, "[w]e presume that the General Assembly intended for the

13

statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes." *Shawnee Telecom Res., Inc. v. Brown,* 354 S.W.3d 542, 551 (Ky. 2011) (citing *Hall v. Hospitality Resources, Inc.,* 276 S.W.3d 775 (Ky. 2008); *Lewis v. Jackson Energy Cooperative Corporation,* 189 S.W.3d 87 (Ky. 2005)).

Appellant, Big Sandy Regional Jail Authority, argues that if the arresting county is responsible for the cost of incarceration regardless of the county from which the charges or warrant originated, then the latter clause of the sentence is meaningless. The majority disputes this interpretation and lists a number of circumstances in which a county other than the arresting county would be responsible for the cost of incarceration. A closer examination of each of the circumstances listed by the majority is necessary for this analysis.

First, the majority points to postconviction prisoners sentenced by order of a county's courts. In this instance, a prisoner would have to be in the same county as the court handing down the sentence. If the sentence is for a felony conviction, then the state is responsible for the cost of post-judgment incarceration. If the sentence is for a misdemeanor, then the sentencing court would order the prisoner to be incarcerated in the jail of the county where the court is located and in which the crime occurred.

The next instance listed in the majority's opinion involves prisoners held by court order for probation violations. The court hearing an alleged probation violation and ordering a revocation would be the sentencing court. The court would order the prisoner incarcerated in the county jail. The state would be

14

responsible for felony prisoners and the county in which the court was located and in which the crime occurred would be responsible for misdemeanor prisoners.

The majority opinion also listed prisoners held for contempt violations as a possible example of a circumstance in which a county other than the arresting county could potentially be responsible for housing prisoners. Anyone sentenced for a contempt violation would be sentenced by the court in which the contempt occurred. Therefore, the court would order the prisoner incarcerated in the jail of the county in which the court was located and the contempt occurred.

The final circumstance listed by the majority is what occurred in the present case. In this scenario, an inmate is held pre-conviction by order of the court pending trial. The prisoners in the current case were arrested on warrants from Fayette County courts. The warrants were orders from Fayette County courts to arrest person accused of violating the law in Fayette County and to bring them before the courts in Fayette County. KRS 441.025 (1) states: "the fiscal court of each county shall provide for the incarceration of prisoners . . . held by order of the courts in the county." The inmates here were held pursuant to orders from courts located in Fayette County, where the crimes occurred.

The officers in the counties served by the jail lacked the legal authority to arrest the prisoners without the orders to arrest from Fayette County. The statute is clear that the county responsible for the incarceration is the one in

15

which the court that ordered the incarceration is located. The court located in the county in which the crime occurred is the court that would have the case and the court that would be ordering the prisoner held.

"[I]t has been long established the specific provision takes precedence over the general provision." *Porter v. Commonwealth,* 841 S.W.2d 166, 168–69 (Ky. 1992) (citing *Morgan County Board of Education v. Elliott,* 260 Ky. 672, 86 S.W.2d 670 (1935)). The first portion of KRS 441.025(1) provides that each county will be responsible for the incarceration of prisoners arrested in the county. The second portion provides that the county will be responsible for prisoners held by orders of the courts in the county. If a person is arrested pursuant to a warrant from Fayette County, then he is being held by order of the courts in Fayette County. Therefore, the more specific provision that a county is responsible for prisoners held by orders of the courts of the county controls—and Fayette County would be responsible for prisoners arrested pursuant to orders of the courts of Fayette County.

Pursuant to KRS 431.005(1), an officer may arrest a person if they observe the crime being committed, have sufficient probable cause of a felony committed in their jurisdiction, or are ordered to do so by order of a court. If the arrest occurs because the officer observed the crime being committed or had sufficient probable cause evidence of a felony committed in the officer's jurisdiction, then the crime occurred in the county that incarcerated the prisoner. In short, an officer makes an arrest either for crimes that occur in his county or pursuant to court order.

16

The majority states that "[t]he General Assembly did not mandate that counties reimburse each other for the cost of housing prisoners held by order or judgment of another County." I must respectfully disagree. The statute specifically states which counties shall provide for the incarceration of prisoners. It is not for this court to second-guess, alter or revise the responsibility provided by the legislature. The fact that the legislature did not specify how and when one county would reimburse another does not change the fact that it specified who was responsible to provide for the incarceration.

The language of the statute is clear and its meaning is plain. Each circumstance described in the statute places the responsibility for incarceration on the county in which the crime occurred and whose courts have the case. For those reasons, I dissent from the majority and would reverse and remand.


COUNSEL FOR APPELLANT:

Nelson Theodore Sparks


COUNSEL FOR APPELLEE:

Charles Edwards III
Michael Keith Horn
LFUCG Department of Law