**CARETENDERS, INC., Appellant,**

**v.**

**COMMONWEALTH of Kentucky,
Appellee.**

**No. 90–SC–000813–DG.**

Supreme Court of Kentucky.

Dec. 19, 1991.

William E. Johnson, J. Guthrie True, Stoll, Keenon & Park, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Michael Harned, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, Thomas A. Donan, Bardstown, for appellee.

## OPINION OF THE COURT

The Kentucky Supreme Court hereby affirms the decision of the Court of Appeals in this matter. This Court hereby adopts the majority opinion of the Court of Appeals by Howard, J., with Howerton, C.J., and Miller, J., sitting.

"On October 6, 1987, J.A. Lewis entered into an agreement with appellant, Caretenders, Inc., to provide home health care services on a live-in basis for his 83–year–old mother, Odell Lewis. Caretenders had provided services for Odell in September and possibly early October of 1987 under a state paid program.

Odell's health was not good. She was admitted to Flaget Memorial Hospital in Bardstown, Kentucky, on September 18, 1987. The diagnosis included an embolus in a leg artery, right groin hematoma, diabetes, severe atherosclerosis, and obesity. The embolus was removed and she was subsequently discharged. From that time on, Odell was essentially bed-ridden.

Odell was hospitalized again on October 15, 1987, suffering from dehydration resulting principally from vomiting and diarrhea. Odell was diagnosed as suffering from gastroenteritis and diabetes. She was treated and discharged on October 22, 1987.

On December 11, 1987, Odell was readmitted to the hospital, suffering from a stone in her right kidney, urinary tract infection, diabetes and decreased renal function. Odell was treated with intravenous antibiotics and was released on December 15, 1987, with an indwelling catheter. Following each of these discharges,

Odell returned home under the care of Caretenders.

Odell was examined at home by Dr. Brown, her treating physician, on January 15, 1988. A reddened area on Odell's sacrum had become a decubitus (pressure or bedsore). Decubiti on her hip area and her right heel were also noted.

On February 9, 1988, Odell was readmitted to Flaget for treatment of a urinary tract infection and the decubiti. Dr. Anderson examined Odell and found that she had "multiple, extensive" decubiti on her body. The area over her sacrum was larger and extended to the bone. Dr. Anderson reported that she appeared unwashed and dirty and smelled of necrotic material.

On April 25, 1988, an indictment was brought against Caretenders, Korine Martiuello, a registered nurse and administrator of Caretenders' Elizabethtown office, Delores McDonald, a registered nurse in Caretenders' visiting services department, and Loretta Muncy, a licensed practical nurse in the company's nursing and supportive care services program. The defendants, while acting as a licensed caretaker or employee thereof, allegedly violated KRS 209.-990(2) because they knowingly and willfully neglected, from January 1, 1988, to February 9, 1988, an adult patient, Odell Lewis, causing her serious mental and/or physical injury or permanent disability.

Following a jury trial, Caretenders was convicted of a class A misdemeanor under KRS 209.990(2). The three nurses were acquitted. Caretenders was fined $8,333.33. This appeal follows.

Caretenders first contends that the jury verdicts were repugnant and inconsistent because it was convicted while its three agents were acquitted.

The Commonwealth maintains that by failing to object to the verdict as inconsistent when it was rendered, the issue has not been preserved. In *Horn v. Hancock*, Ky. App., 700 S.W.2d 419 (1985), this Court held that when a jury renders an inconsistent verdict, the error must be brought to the trial court's attention while the jury is available or it is waived. *See Oldham v.*

*Adkisson*, Ky., 448 S.W.2d 55 (1969); *Breathitt Funeral Home v. Neace*, Ky., 437 S.W.2d 490 (1969).

Caretenders argues that the waiver rule has been applied only to civil cases, and not criminal cases, and should not be enforced against it. The application of the waiver rule does not appear to depend on the type of case at issue, but the type of defect in the verdict.

When the defect is merely formal, the accused must bring the matter to the trial court's attention before the jury is discharged or the defects are waived. *Franklin v. Commonwealth*, Ky., 490 S.W.2d 148 (1972). In that case, the verdict was defective in regard to the sentence imposed, but because the defendant had not objected in a timely manner, the defect was deemed waived. The sentencing could not then be resubmitted to a jury, the Court remanded the case to the trial court itself for sentencing.

If the defect is one of substance, the error may be raised after the jury has been discharged such as in a motion for new trial. *See Prince v. Commonwealth*, Ky. App., 576 S.W.2d 244 (1978). In *Prince, supra*, this Court held that an error in a verdict was substantive where we were unable to determine of what crime the defendant was convicted from the face of the verdict. We determined the defect was preserved for our review when it had been brought out in the motion for a new trial, even though no objection was made before discharge of jury.

If an inconsistency in the verdict exists in the case at bar, we think that it must be considered substantive. It would be difficult to call the question of guilt or innocence of a party a matter of procedure.

Caretenders and the three nurses were indicted for their conduct "while acting as a licensed caretaker or employee thereof." The term "caretaker" is defined in KRS 209.020(6) as "an individual or institution who has the responsibility for the care of the adult as a result of family relationship, or who has assumed the responsibility for

the care of the adult person voluntarily, or by contract, or agreement."

The indictment was under KRS 209.-990(2) which provides that "any caretaker who knowingly and willfully abuses, neglects, or exploits an adult within the meaning of this Chapter" is guilty of a class C felony if the prohibited conduct results in serious physical or mental injury or permanent disability or a class A misdemeanor if the adult suffers minor physical injury or temporary disability.

Caretenders provided services for Odell by contract and thus was clearly a caretaker as defined in KRS 209.020(6). Consequently, Caretenders was subject to liability under KRS 209.990(2). It is true that a corporation can only act through its agents. Caretenders' agents in the case at bar included not only the three named defendants, but the live-in aides as well. Thus, we see no inconsistency in the verdict.

*G. & H. Cattle Co. v. Commonwealth*, 312 Ky. 315, 227 S.W.2d 420 (1950), relied upon by Caretenders, is not applicable to this case. G. & H. Cattle was a corporation which operated a cattle-feeding operation. The company and its officer in charge of operations at the feed lot were indicted for committing a nuisance. The charges stemmed from allegations that sewage overflowed from ponds into the Salt River. The trial court directed a verdict in favor of the named officer, but the corporation was convicted. The judgment was reversed on appeal.

The Court stated that it was unable to understand how the corporation could be liable when the officer in charge of the operation was given a directed verdict because the corporation was acting solely by and through the officer. The Court analogized the situation to when a master and servant are jointly indicted for the latter's negligence and if the jury finds the servant not negligent, the master cannot be held liable.

One reason we believe *G. & H. Cattle*, *supra*, is not applicable to this case is that the Court reversed the judgment because of insufficient evidence. Thus, the statements by the court regarding inconsistent verdicts should be considered dicta. In addition, the three nurses were not solely responsible for Odell's care. Most, if not all, of Odell's daily routine care was performed, properly or not, by Caretenders' live-in aides.

A related issue is Caretenders contention the trial court's instructions resulted in an amendment of the indictment and its conviction on an offense not charged in the original indictment.

The Commonwealth asserts that Caretenders did not preserve this issue by failing to object on this ground when the instructions were given as required by RCr 9.54(2). Caretenders concedes that it did not make a timely objection, but maintains that the issue should be considered on appeal as a palpable error under RCr 10.26.

In *United States v. Jones*, 647 F.2d 696 (6th Cir.1981), the defendants did not make a timely objection, but the Court held that a charge which amends the indictment is plain error. Therefore, we will consider Caretenders' argument.

Caretenders reiterates its argument that the indictment charged it with violating KRS 209.990(2) solely through the actions of the three named defendants. The instructions allowed for conviction of the company through the conduct of its "agents, servants or employees." Caretenders claims that the instructions expanded and thus amended the indictment which is "prejudicial per se." *United States v. Burkhart*, 682 F.2d 589, 591 (6th Cir.1982).

The Commonwealth points out that the criminal statute on corporate liability, KRS 502.050, provides that a corporation is guilty of an offense when the conduct constituting the offense is engaged in by an agent of the corporation acting in the scope of his employment.

Caretenders asserts that because KRS 502.050 was not listed in the indictment, it had no notice that violation of KRS 502.050 was being alleged and thus that it could be convicted if the three named nurses were acquitted. Therefore, it maintains, it was convicted of an offense not charged in the indictment, which it was not prepared to

meet. Caretenders also argues that it was misled by the failure to list KRS 502.050 in the indictment which, under RCr 6.10(3), is cause for reversal of the conviction.

It is difficult for us to see how the indictment was amended or Caretenders misled by the conviction due to the conduct of the live-in aides. The company was a "caretaker" under KRS 209.020(6) which had the responsibility for the care of an adult, i.e. Odell Lewis. The most direct contact between Odell and Caretenders was through the aides who were there around the clock, not the three named defendants. Although the aides were not named and KRS 502.050 was not listed in the indictment, Caretenders surely expected that the Commonwealth intended to pursue neglect by the aides and attribute it to the company. In our view, the indictment against Caretenders included the conduct of all of its employees, not just those named.

Caretenders next contends that the trial court failed to instruct on all of the evidence and available defenses.

The instructions provided that Caretenders would be guilty if the jury found beyond a reasonable doubt that Caretenders through its agents, servants or employees, knowingly and willfully neglected Odell Lewis. Caretenders complains that the trial court failed to give instructions defining "knowingly" or "willfully," or an instruction providing that defendants had a right to rely on the physician's orders and would not be guilty unless they were altered or disobeyed. Thus, the trial court, asserts Caretenders, failed to comply with its duty under *Callison v. Commonwealth*, Ky.App., 706 S.W.2d 434 (1986), to instruct on the whole law of the case.

In *Lawson v. Commonwealth*, 309 Ky. 458, 218 S.W.2d 41, 42 (1949), the Court stated as follows: "It is the duty of the court in a criminal case to instruct on the whole law of the case and to include, when necessary or proper, definitions of technical terms used. But failure to define 'felonious,' 'malicious' and 'wilful' (sic) is not reversible error."

It is not beyond the average juror that "knowingly" means with knowledge or that "willfully" means with intent or intention. We do not believe these are technical terms requiring instructions.

In regard to Caretenders' claim concerning the orders of Odell's treating physician, there is nothing in KRS 209.990(2) or any other authority which provides a defense to a caretaker charged with willful and knowing neglect of compliance with a physician's orders. Further, the physician's orders called for Caretenders to provide *inter alia* personal assistance. There is no evidence that Dr. Brown in any way ordered that Odell be neglected. Consequently, refusal to give the requested instructions was warranted.

Caretenders next contends that KRS 209.990(2) is unconstitutionally vague and overbroad.

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). *See Sasaki v. Commonwealth*, Ky., 485 S.W.2d 897 (1972), vacated on other grounds, 410 U.S. 951, 93 S.Ct. 1422, 35 L.Ed.2d 684 (1973). However, not all statutes which a reviewing court determines could have been drafted with greater precision are void-for-vagueness if the law provides sufficient warning to persons about what conduct is prohibited. *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).

We have stated *supra* the language of KRS 209.990(2). Caretenders makes a blanket allegation that the terms of the statute are not defined with sufficient clarity to permit an ordinary person to determine what conduct is prohibited. The definitions of "caretaker" in KRS 209.020(6) and "adult" in KRS 209.020(4) however are clear.

It appears that the only terms in KRS 209.990(2) which might be considered vague are "abuse" and "neglect." In KRS

209.020(7), "abuse or neglect" is defined in pertinent part as "the infliction of physical pain, injury or mental injury, or the deprivation of services by a caretaker which are necessary to maintain the health and welfare of an adult."

When a person or institution assumes the role of caretaker, the caretaker is prohibited from inflicting physical pain or injury or mental injury or depriving the adult of any services necessary to maintain his or her health and welfare. To describe every possible situation in which the infliction of pain or injury or the deprivation of necessary services could occur would be pointless and would make the statute unwieldy. KRS 209.990(2) and KRS 209.020 provide adequate warning to ordinary persons of the prohibited conduct and are sufficient guides to discourage arbitrary or discriminatory enforcement. On this point, the instant case is similar to *Cutrer v. Commonwealth*, Ky.App., 697 S.W.2d 156 (1985), and *Carpenter v. Commonwealth*, Ky., 771 S.W.2d 822 (1989), in which the criminal abuse statutes were upheld against claims of vagueness.

In *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Supreme Court stated that a challenge for overbreadth must fail unless the law prohibits a substantial amount of constitutionally protected conduct. The Court has also stated that outside the First Amendment, a criminal statute may not be attacked as overbroad. *Schall v. Martin*, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). Caretenders has made no allegations that KRS 209.990(2) inhibits any constitutionally protected activity. Thus, the overbreadth argument must fail.

Caretenders next contends that the jury verdict is against the clear weight of the evidence.

Dr. Brown testified on behalf of Caretenders that Odell's problems were mainly the result of a general decline in her physical and mental status. Dr. Brown noted her physical condition, including diabetes and lack of proper nutrition. Further, Dr. Brown stated that Odell's mental status was such that she was unaware of or unable to communicate her needs.

Dr. Brown felt that the decubiti were not appreciably worse on February 9, 1988, than when he examined her on January 5, 1988. After the January 5, 1988 visit, Dr. Brown concluded that it would not be helpful to hospitalize Odell for treatment of the decubiti because he did not think they were going to heal.

Dr. Brown testified that decubiti were caused by pressure, not poor hygiene, and they may develop more easily in a person whose nutritional status is bad. Dr. Brown admitted that cleanliness and hygiene is necessary for the treatment of decubiti.

Dr. Godfrey also testified that the cause of decubiti is pressure with the onset being effected by age and nutritional status. Dr. Godfrey stated that other contributing factors in Odell's case included diabetes and obesity. Dr. Godfrey noted that a decubitus was reported during her hospital stay in December of 1987. Dr. Godfrey believed that the development of further decubiti was inevitable. Dr. Godfrey conceded that while hygiene is not a factor in the development of a decubitus, it is in the treatment of these wounds. It was brought out on cross-examination that Dr. Godfrey was on the Caretenders' board of directors.

Dr. Anderson testified that measures such as rotating Odell every two hours would have prevented the decubiti. Dr. Anderson testified that Odell's diabetes made her more prone to infections, especially since Odell suffered bowel and bladder difficulties. Under these circumstances, asserted Dr. Anderson, cleanliness is important in preventing infection in any area damaged by pressure. Dr. Anderson saw the reddened area on Odell's sacrum on admission in December, 1987, and testified that there was no dead tissue present at that time.

The live-in aides were instructed to assist Odell in bathing and to rotate her every two hours. Odell's son, who visited nearly every day, testified that she was not turned as ordered. The aides were to keep daily logs but these often were very incomplete.

On several occasions nothing was entered in the logs about turning and/or bathing. Some of the entries indicated that turning and bathing were done infrequently. There was evidence that the aides were not properly trained or supervised and were performing some tasks for which they were not authorized. There was also evidence to the contrary. Other evidence was produced at the lengthy trial which would be impractical and unnecessary to reproduce in this opinion.

The test for directed verdict of acquittal based on insufficiency of the evidence is "[i]f under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal." *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3, 5 (1983). Under the evidence as a whole, we cannot say the jury was clearly unreasonable in finding Caretenders guilty.

Caretenders next contends that the prosecutor's improper statements made during his summation warranted a mistrial.

The first comment complained of by Caretenders was when the prosecutor explained why he did not bring in other people to express their dissatisfaction with Caretenders. The Commonwealth maintains that the prosecution mistakenly believed that this comment was invited by the closing statements of counsel for Caretenders, but concedes the statement should not have been made. The Commonwealth argues that the comment was not prejudicial and there was not a timely objection or motion for mistrial.

Caretenders compares the instant case with *Moore v. Commonwealth*, Ky., 634 S.W.2d 426 (1982), in which the prosecutor improperly stated that he wished the jury could have heard parts of a tape the trial court had ruled inadmissible.

The prosecutor has the duty to confine his argument to the facts in evidence and the reasonable inferences which can be derived therefrom. *Williams v. Commonwealth*, Ky., 644 S.W.2d 335 (1982). However, a claim of improper argument by the prosecution is not preserved for review if an objection is not made during the course of the argument. *Barnett v. Commonwealth*, Ky., 403 S.W.2d 40 (1966). *Trent v. Commonwealth*, Ky.App., 606 S.W.2d 386 (1980). Caretenders did not move for a mistrial or in any other way object on this ground until after the conclusion of the prosecution's argument. Consequently, the error is not preserved.

Secondly, Caretenders complains of the prosecution's remarks to the jury that "I beg of you to stand tall, you've got to make sure this type of thing doesn't happen again here in Nelson County." Caretenders objected on the ground of the community standard rule and the objection was sustained. No motion for mistrial was made on this ground.

Caretenders maintains that the prosecution may not make remarks in his argument which refer to the consequences of a particular verdict. *See Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981).

In *Wallen v. Commonwealth*, Ky., 657 S.W.2d 232 (1983), the prosecutor in his closing argument stated that "one way" to stop these "useless killings" is for all of us to do our jobs and see that the defendant pays the penalty for what he has done. The prosecutor continued that "the only way to let them know is to find him guilty as he is."

The Court reasoned that the prosecutor's argument did not suggest the defendant be punished inappropriately but only as fit the situation. The Court continued that: "We have not engaged in any blanket condemnation of prosecutorial comment related to deterrence. We have condemned argument only where the prosecutor suggests that the jury convict or punish on grounds or for reasons not reasonably inferred from the evidence." *Id.* at 234.

We believe the prosecutor's comments at issue were related to deterrence and, taken as a whole, were not prejudicial.

The judgment is affirmed.

All concur.