RENDERED: SEPTEMBER 24, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0696-CL

IN RE:

COMMONWEALTH OF KENTUCKY                                                 APPELLANT

V.               JEFFERSON COUNTY DISTRICT COURT
CASE NO. 18-T-040568

KEVIN CHARLES CURRY                                                        APPELLEES

**OPINION OF THE COURT BY JUSTICE LAMBERT**

**<u>CERTIFYING THE LAW</u>**

The Commonwealth of Kentucky seeks certification of law pursuant to CR[1] 76.37(10).  The question before us is whether KRS[2] 189.390 subsections (3)-(5) violate the due process provisions of the United States and Kentucky Constitutions on the grounds that the speed limit statutes are unconstitutionally vague.  The Commonwealth claims (1) litigants asserting that a statue is void-for-vagueness must challenge the statute *as-applied* to

---

[1] Kentucky Rule of Civil Procedure.

[2] Kentucky Revised Statute.

their conduct when the statute does not implicate the First Amendment and (2) the statutes in this case are constitutional regardless of the form of a review. For the reasons set forth below, we conclude KRS 189.390(3)-(5) are not unconstitutionally vague.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On October 5th, 2018, an officer of the Louisville Metro Police Department stopped Mr. Curry as he was driving southbound on I-71 near mile marker 4 in Louisville, Kentucky.  By official order of the Secretary of Transportation, the speed limit along this segment of highway is fifty-five miles per hour.[3]  Prior to the stop, the officer observed Mr. Curry driving ninety-three miles per hour.  A citation was issued to Curry, charging him with speeding and assigning a court date.

Subsequently, Curry moved the Jefferson District Court to find that KRS 189.390 was unconstitutional: Curry claimed the statute was void for vagueness because a reasonable person could not read the statute and understand which speed limit applied on a given road in Kentucky.  On September 19th, 2019, the District Court issued an order finding 189.390(3)-(5) facially unconstitutional, holding that KRS 189.390 failed to provide citizens with sufficiently definite notice of the applicable speed limits on Kentucky roads and permitted arbitrary enforcement of the law.

---

[3] KRS 189.390(4) authorizes the Secretary of Transportation to set a speed limit along specific segments of highway if an engineering study supports that an alteration is reasonable.  *See* Section II of this Opinion, *infra,* for further discussion of the statutory scheme.

Ultimately, the District Court dismissed the prosecution against Curry in its Daily Disposition Report for October 31st, 2019. The Commonwealth requested certification of the law regarding the constitutionality of KRS 189.390(3)-(5), claiming the issue poses a question of significant importance to the Commonwealth and the general public. We agreed and granted the request for certification.

## II.  KRS 189.390 and Related Statutes

KRS 189.390 sets out the law governing driving speed on Kentucky roads. The general rule in Kentucky is that an "operator of a vehicle upon a highway shall not drive at a greater speed than is reasonable and prudent, having regard for the traffic and for the condition and use of the highway."[4] As such, the applicable speed limit at any given time in Kentucky is a reasonable speed under the circumstances.

Subsections (3)-(5) define the maximum reasonable speed on specific sections of road and outline the procedure under which those limits might be altered. Subsection (3) sets the baseline for maximum speed limits applicable to "state highways."[5] Relevant to this case, the statute sets the baseline maximum speed limit for interstate highways and parkways as sixty-five miles per hour.[6] The speed limits defined in subsection (3) act as baselines because the statute expressly provides two situations in which those speed limits do not

---

[4] KRS 189.390(2).

[5] KRS 189.390 (3). The statute defines "state highways" as "a highway or street maintained by the Kentucky Department of Highways." KRS 189.390(1).

[6] KRS 189.390(3).

3

apply. First, if conditions exist that would require a driver to lower her speed in order to drive in a "reasonable and prudent manner," then the driver must conform to that lower speed. Second, the statute authorizes the Secretary of Transportation to establish a different speed limit under subsection (4).

Subsection (4), in turn, grants the Secretary of Transportation the authority to establish a new speed limit on any part of a state highway if an engineering and traffic investigation supports that an increase or decrease is reasonable or safe under the circumstances.[7] The statute generally prevents the Secretary from increasing the speed limit beyond sixty-five miles per hour, except on certain enumerated segments of highway.[8] Subsection (5) permits a city or county to establish speed limits within the city or county subject to certain limitations.[9] Any alteration to a statutory speed limit by a city or county is not effective until the Secretary approves the alteration.[10] In sum, the statute provides that the basic speed limit in Kentucky is a reasonable speed, enumerates certain speeds limits as a statutory baseline, and outlines procedures by which the Transportation Cabinet or local governments may deviate from those statutory baselines.

---

[7] KRS 189.390(4).

[8] *Id.*

[9] KRS 189.390(5)(a).

[10] KRS 189.390(5)(b). The Secretary cannot approve an alteration raising the speed limit above fifty-five miles per hour on state highways or within a business or residential district. *Id.*

4

To fully understand Kentucky's speeding law, two other statutes must be considered. First, KRS 189.231 grants the Secretary of Transportation authority to regulate traffic on state highways "in such a manner as is reasonably necessary to promote the safety of the traveling public."[11] To this end, KRS 189.231 permits the Secretary to install "traffic control devices" along state highways.[12] It is a statutory offense for a driver to disregard the instructions of an official traffic control device.[13]

KRS 189.337 defines "official traffic control devices" as "all signs, signals, markings, and devices placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or dividing traffic."[14] Under the statute, traffic control devices must conform to the standards of a manual promulgated by the Department of Highways.[15] In lieu of promulgating a state-specific manual, the Department of Highways adopts the Federal Highway Administration's Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD).[16] The MUTCD requires that speed limit signs display the speed limit as "established by law, ordinance, regulation, or as adopted by the authorizing agency based on the engineering study."[17] Further,

---

[11] KRS 189.231(3).

[12] KRS 189.231(1).

[13] *See* KRS 189.231; KRS 189.990(15).

[14] KRS 189.337(1).

[15] *Id.* at (2)-(3).

[16] 603 Ky. Admin. Reg. 5:050(2)-(3) (2020).

[17] MUTCD, Section 2B.13.

the MUTCD provides that signage "shall be installed at or near where the regulations apply" and "shall clearly indicate requirements imposed by the regulations."[18]  In short, Kentucky law requires speed limit signs reflecting the applicable speed limit—whether determined by statute, ordinance, or official order—to be posted at or near the point at which that speed limit applies.

## III.    KRS 189.390(3)-(5) are neither unconstitutionally vague as-applied or on their face.

The Fourteenth Amendment provides "[no] state shall… deprive any person of life, liberty, or property, without due process of law."[19]  When a state enacts a criminal law "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement," the state violates due process.[20]  The fact that a statute could have been drafted more precisely does not mean the statute as written is invalid; a statute may be upheld so long as the law provides sufficient warning to persons about what conduct is prohibited.[21]

Before applying these principles to the statute in question, we pause to address an issue raised by the Commonwealth.  The Jefferson District Court

---

[18] *Id.* at Section 2B.01.

[19] U.S. CONST. AMEND.  XIV, §1.

[20] *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983)); *Stinson v. Commonwealth*, 396 S.W.3d 900, 906-08.

[21] *See Caretenders, Inc. v. Commonwealth*, 821 S.W.2d 83, 87 (Ky. 1991) (citing *Rose v. Locke*, 423 U.S. 48, 50 (1975)).  *See also Commonwealth v. Kash*, 967 S.W.2d 37, 43 (Ky. App. 1997).

held that relevant provisions of KRS 189.390 were unconstitutional on their face. The Commonwealth contends the District Court misapplied the law by ignoring controlling precedent, specifically *Kotila v. Commonwealth*. *Kotila* stated that "where a statute does not implicate First Amendment values, '[a] vagueness challenge ... cannot be aimed at the statute on its face but must be limited to the application of the statute to the particular conduct charged."[22]

To be sure, this proposition finds consistent support in both federal and Kentucky case law.[23] We acknowledge, however, that neither the United States Supreme Court nor the Kentucky Supreme Court consistently views this principle as controlling. For instance, in a recent void for vagueness case, *Sessions v. Dimaiya*, the United States Supreme Court facially reviewed a statute that did not implicate the First Amendment.[24] Moreover, *Sessions* follows multiple instances throughout the years in which the United States Supreme Court facially reviewed statutes unrelated to the First Amendment.[25]

---

[22] 114 S.W. 3d 226, 248-49 (Ky. 2003) (abrogated on other grounds by *Mills v. Dep't of Corr. Offender Info. Services*, 438 S.W.3d 328 (Ky. 2014)).

[23] *See e.g. Chapman v. United States*, 500 U.S. 453, 467 (1991)( "First Amendment freedoms are not infringed by [the statute], so the vagueness claim must be evaluated as the statute is applied to the facts of this case."); *United States v. Mazurie*, 419 U.S. 544, 550 (1975)("It is well established that vagueness challenged to statute which do not involve First Amendment freedoms must be examined in the light of the fats of the case at hand." (citations omitted); *Stinson*, 396 S.W.3d at 907; *Tobar v. Commonwealth*, 284 S.W.3d 133, 134-35 (Ky. 2009).

[24] *See* 138 S.Ct. 1204 (2018*).* The *Sessions* decision followed the Court's opinion in *Johnson v. United States*, which facially invalidated a similar provision in the Armed Career Criminal Act. 576 U.S. at 595.

[25] *Skilling v. United States*, 561 U.S. 358 (2010) (performing facial review of the constitutionality of the federal honest-services statute); *City of Chicago v. Morales*, 527 U.S. 41 (1999) (plurality opinion) (facially reviewing city loitering ordinance); *Kolender v. Lawson*, 461 U.S. at 353 (facially reviewing an anti-loitering provision).

Similarly, Kentucky case law takes a variety of approaches to this question. In *Kotila* itself, which states that facial vagueness review is limited to statutes concerning the First Amendment, this Court determined that facial review was appropriate due to "the volume of convictions and appeals" resulting from the application of the statute in question.[26] At least one other decision of this Court requires as-applied review.[27] Other decisions, however, simply engage in facial review even when the challenged statute does not implicate the First Amendment.[28]

Therefore, although statements in our previous opinions can be read to suggest otherwise, our holdings do not preclude facial review of a criminal statute challenged as vague, even if the statute at hand does not implicate First Amendment concerns. In the present case, the process of certifying the law requires us to look beyond the facts of the underlying case and consider the validity of the statute as a whole. Moreover, we note that KRS 189.390(3)-(5) pass constitutional muster regardless of whether the Court engages in as-applied or facial review.[29] As a result, it is not necessary at this time to outline

---

[26] 114 S.W. 3d at 248. This Court took a similar approach in *Stinson v. Commonwealth*, 396 S.W.3d 900, 906-08 (Ky. 2013). There, this Court stated that as-applied review was required in cases that do not involve First Amendment freedoms but proceeded to hold that the statute was facially valid. *Id.*

[27] *See Tobar*, 248 S.W.3d at 134-35.

[28] *Wood v. Commonwealth*, 178 S.W.3d 500, 507-510 (Ky. 2005) (performing facial review of statute permitting aggravated sentence for a person with substantial history of serious assaultive convictions); *Brown v. Commonwealth*, 975 S.W.2d 922 (Ky. 1998) (holding that the statute defining wanton murder was facially constitutional).

[29] We observe that Curry's case clearly fails under an as-applied review standard. Curry was driving twenty-three miles per hour faster than the highest

a specific procedure concerning the propriety of facial or as-applied vagueness challenges to criminal statutes. It suffices to say that in the case below, the Jefferson District Court did not clearly err or misapply controlling precedent in reviewing KRS 189.390 on its face.

We begin our own vagueness analysis of KRS 189.390(3)-(5) by examining the statute in light of basic principles of statutory construction.

> In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one. Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statutes legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts.[30]

Under these principles, we hold that that KRS 189.390 (3)-(5) provides ample notice of what conduct is prohibited under the statute. The district court held that the statute failed to provide sufficiently definite notice of what conduct is proscribed, relying in large part upon the complexity of the statute's language,

---

possible speed limit in Kentucky. As such, Curry could not have believed his conduct to conform to any possible interpretation of KRS 189.390.

[30] *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011) (internal citations omitted).

9

the reference to official orders extraneous to the statute, and the failure of the statue to reference posted speed limits.

We disagree. The statutory and regulatory scheme is admittedly complex, yet this complexity is not fatal to KRS 189.390(3)-(5). It is clear from the statutory text of KRS 189.390 alone that the baseline speed limit on a state highway must either be speed limit set in subsection (3) or an altered speed limit set pursuant to subsection (4) or (5). While KRS 189.390 does not explicitly mention regulatory signage or expressly incorporate the speed limits set by official order, the law does not require that all specific acts violative of a statute be specifically enumerated.[31] Moreover, a given statute must be analyzed by reference to statutes to which it is closely related.

KRS 189.390 is closely linked to KRS 189.231, which authorizes the Secretary to regulate traffic and install signage reflecting those regulations, and KRS 189.337, which points one towards the legal standard governing regulatory signage. Under the later statute, KRS 189.337, all regulatory signs must conform to the standards set out in the manual adopted by the Department of Highways. Under that manual, all regulatory signs installed by the Secretary must accurately reflect the governing law they represent.[32] Put simply, all speed

---

[31] *See O'Leary v. Commonwealth*, 441 S.W.2d 150, 155 (1969) ("There are many crimes that are and must be broadly defined, but which are not rendered invalid by the fact that the definitions do not specify every conceivable exculpatory circumstance.").

[32] *See MUTCD*, Section 2B.13 (requiring that speed limit signs display the limit established by law, ordinance, regulation, or *as adopted by the authorized agency based on the engineering study*) (emphasis added).

limit signs in Kentucky must accurately reflect the speed limit as defined by the law, regardless of whether that limit is defined according to the statute, local ordinance, or official order. Essentially, a driver is notified of the applicable legal standard every time they pass a speed limit sign.

The General Assembly could have passed a statute that expressly stated that any alteration to the statutorily defined speed limit would be reflected in posted signs. And that statute would be somewhat clearer. But the fact that a more precise statute could have been drafted is irrelevant if the statute in question provides sufficient notice of proscribed conduct.[33] In this case, KRS 189.390(3)-(5), considered in context of related statutes and regulations, adequately advise drivers in Kentucky of the governing speed limit at a particular location.

Further, we consider whether KRS 189.390(3)-(5) encourage arbitrary and discriminatory enforcement. The district court noted that often the statute and signs contradict one another and that it was not clear whether law enforcement officers charged defendants with a violation of the statute or a violation of the sign.

The prohibition against arbitrary enforcement requires a statute to provide "minimal guidelines" to prevent a "standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."[34] To the extent that any conflict derives from the fact that the sign references a speed limit

---

[33] *See Caretenders*, 821 S.W.2d at 87.

[34] *Kolender*, 461 U.S. at 358.

11

properly set by either a local ordinance or an official order, there is no legal issue. The statute clearly specifies that a speed limit may be determined either by statute, ordinance, or official order. Additionally, the statute and regulations require signs to accurately represent the law. Thus, in the abstract, the fact that the statute and sign state different speed limits does not render KRS 189.390(3)-(5) standardless. A defendant may, of course, raise the issue that a particular sign misrepresents the law or that a particular officer enforced an incorrect speed limit. Here, Curry did not so allege.[35] Absent evidence of such a claim, we leave that issue to be determined on a case-by-case basis.

Considered as a whole, KRS 189.390(3)-(5) provides specific guidelines for law enforcement and courts to follow. The statute requires the official citation issued following a violation of any speed limit to specify the speed at which the defendant is alleged to have driven and the lawful speed applicable to the exact location at which the violation allegedly occurred.[36] Moreover, KRS 189.394 provides a schedule of fines demonstrating the exact penalty for violation of KRS 189.390. Based on the foregoing, we determine that KRS 189.390(3)-(5) provides ample guidance for the law to be consistently enforced.

## CONCLUSION

In response to the certified question, we conclude that KRS 189.390(3)-(5) provides citizens with fair notice of the conduct it proscribes and does not

---

[35] Here the speed limit sign accurately matched the Official Order of the Secretary of Transportation.
[36] KRS 189.390(8).

12

encourage arbitrary enforcement. As such, the provisions of the statute are not void-for-vagueness and do not violate the United States or Kentucky Constitutions. The law is so certified.

All sitting. All concur.

COUNSEL FOR COMMONWEALTH OF KENTUCKY:

Michael J. O'Connell
Jefferson County Attorney

David A. Sexton
Assistant Jefferson County Attorney

COUNSEL FOR KEVIN CHARLES CURRY:

Gregory Dean Simms
Murphy & Associates, PLLC