RENDERED:  DECEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0600-MR

HIRAM HERNANDEZ                                      APPELLANT

|   | APPEAL FROM KENTON CIRCUIT COURT |
|---|---|
| v. | HONORABLE PATRICIA M. SUMME, JUDGE |
|   | ACTION NO. 19-CR-01318 |

COMMONWEALTH OF KENTUCKY                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND McNEILL, JUDGES.

McNEILL, JUDGE:  Hiram Hernandez appeals from the Kenton Circuit Court's

judgment sentencing him to seven years and six months of imprisonment after a

jury found him guilty of second-degree assault.  *See* Kentucky Revised Statute

(KRS) 508.020.  Hernandez argues the trial court erred by (1) improperly limiting

his questions in voir dire; and (2) erroneously admitting "deterrence" testimony during the sentencing phase of his trial. Upon review, we affirm.

## 1. LIMITATION OF VOIR DIRE

The first issue Hernandez raises on appeal involves a line of questioning the trial court prohibited his counsel from asking the prospective jurors during voir dire. Those questions proceeded as follows:

> DEFENSE: The Commonwealth has the burden of proof. We're not really allowed to define that, but, as the Commonwealth said, it is a burden they have to overcome. We do not have to present any evidence. If, at the end of the case, the Commonwealth has not met whatever to you means "beyond a reasonable doubt," even if we have not presented any evidence, you would still find them not guilty of that point because they have not overcome their burden of reasonable doubt. We do not have to present any evidence. So, could everyone agree that no matter what, if they don't overcome that burden they will still find my client innocent, even if we do not necessarily present any evidence or anything along those lines?
>
> Along those lines, the Commonwealth, or my client, has the right to remain silent. *Does anyone here, raise your hands, think that if you were charged with a crime, you would want to testify to protest your innocence? Does anyone here think they would testify at their trial?* So, [juror], I saw your, um –

(Emphasis added.)

The Commonwealth then objected to Hernandez's counsel continuing the line of questioning italicized above, and a bench conference was held. There,

over the course of the exchange that followed, the Commonwealth elaborated upon

its objection, and trial court explained its reasons for sustaining it:

> COMMONWEALTH: Judge, this question is geared to why someone would or would not testify. If I'm not allowed to comment, we're not allowed to comment on anything about why the defendant can or cannot testify, anything about that, they should not be able to have any commentary, even in voir dire, about why someone would testify or not. The rule is you're not supposed to have any commentary about it. They have that absolute right. But, once they start commenting on it, they open the door to us to start commenting on it.
>
> COURT: Where are you going?
>
> DEFENSE: I was just going to, I mean, I don't think there's an issue with asking someone *why someone might testify or not, to get out if there are any reasons someone might not testify*. I don't –
>
> COURT: Well, it is an absolute privilege, and so if you say someone may not want to testify because they are nervous, then the other, Commonwealth, gets to say they may not want to testify because they are guilty. So, I don't disagree with this analysis. It's been my analysis for a very long time now. [Inaudible.]
>
> DEFENSE: They can't say that. That's what, it's just –
>
> COURT: They can't, but you can't, either. You're bringing into play those things that are not yet, it's an absolute privilege, and so, just exercised, and so it's been my rule in this court for a very long time, and I agree with you, the Commonwealth can't say or do that, but can also say "they might be afraid they're inconsistent," they might be afraid of this, you go down a long list of things versus "just nervous" or "you wouldn't want to do it," so, sustained.

(Emphasis added.)

Following this exchange, Hernandez's counsel resumed voir dire, but proceeded with unrelated lines of questioning.

At trial, Hernandez did not testify. As indicated, he was ultimately convicted of second-degree assault. Now on appeal, Hernandez argues the trial court erred by limiting his voir dire questioning because, in the words of his brief:

> "The principle that a defendant's failure to testify in his own behalf cannot be held against him is perhaps the most critical guarantee under our criminal process, and it is vital to the selection of a fair and impartial jury that a juror understand this concept." *Hayes* [*v. Commonwealth*, 175 S.W.3d 574,] 585 [(Ky. 2005)]. If jurors would be prejudiced by the defendant [sic] decision not to testify, the trial court would have been required to strike those jurors for cause. *Id*. Defense counsel cannot identify jurors holding such prejudice when they are precluded from making the relevant inquiry on voir dire. *Id*. Hiram was unable to identify prejudiced jurors. The Commonwealth argued "the rule" stated defense counsel could not question the jury about Hiram's right to remain silent without opening the door to insinuations from the prosecution that his failure to testify was indicia of guilt. Yet the Commonwealth failed to cite which rule places such limits on a fundamental principal [sic] of voir dire.

We disagree. If the trial court had prohibited asking the venire members *whether they would hold it against Hernandez that he refused to testify*, then Hernandez would be correct: that would have been a proper question for voir dire purposes because a "yes" answer could have afforded a basis for a challenge.

-4-

The Sixth Amendment entitled Hernandez to an impartial jury that would not be adversely influenced by the fact that he exercised his constitutional right to remain silent. *Hayes*, 175 S.W.3d at 583. However, that was not the question his counsel asked; nor was it a question the trial court *prohibited* his counsel from asking.

To review, his counsel sought to elicit from the venire members "why someone might testify or not, to get out if there are any reasons someone might not testify." In other words, the goal was to ask the prospective jurors to *speculate about, comment on, or draw inferences from* "someone's" exercise of their constitutional right to remain silent. And, as set forth in the exchange above, that is precisely why the Commonwealth and trial court found this line of questioning objectionable. This Court has held that when a defendant in a criminal prosecution chooses not to testify, the prosecution cannot ask jurors to draw inferences from it. *See, e.g., Commonwealth v. Robertson*, 431 S.W.3d 430, 436 (Ky. App. 2013). Further, the operative statute, KRS 421.225, provides:

> In any criminal or penal prosecution the defendant, on his own request, shall be allowed to testify in his own behalf, but his failure to do so *shall not be commented upon* or create any presumption against him.

(Emphasis added.)

This Court reviews a trial court's decision to limit the scope of voir dire under the abuse of discretion standard. *See Hayes*, 175 S.W.3d at 583. And, in circumstances where the trial court has prohibited the asking of a question

-5-

during that process, "it is not enough that such questions might be helpful. Rather, the trial court's failure to ask these questions must render the defendant's trial fundamentally unfair." *Id.* (internal quotation marks and citation omitted). "The test for abuse of discretion in this respect is whether an anticipated response to the precluded question would afford the basis for a peremptory challenge or a challenge for cause." *Id.*

Here, this test is not satisfied. As discussed, the trial court only prohibited Hernandez from engaging in open-ended hypothecation and commentary with the venire members regarding why someone might choose not to testify – which would only reflect upon the venire members' ability to speculate, not their willingness to obey the law. Accordingly, we find no abuse in this respect. We reiterate, however, that the standard of our review is abuse of *discretion*. Thus, we do not endorse any *per se* rule forbidding trial courts from allowing the type of questioning that the Commonwealth found objectionable as set forth above; we merely find no abuse where, upon a properly raised and supported objection, the trial court precludes this line of questioning.

## 2. DETERRENCE TESTIMONY

Next, Hernandez takes issue with what he characterizes as "excessive and unnecessary deterrence testimony" which he asserts "rendered the sentencing phase of trial fundamentally unfair." The offending testimony came from Sergeant

(Sgt.) Carrie Ray, a deputy jailer employed at all relevant times at the Kenton County Detention Center. Before discussing the substance of her testimony, however, some context is necessary, starting with the facts underlying the incident that led to Hernandez being charged with second-degree assault.

On July 24, 2019, Hernandez was an inmate at the Kenton County Detention Center. Inmates from Hernandez's pod at the detention center were outside of their cells ordering from the commissary cart. During this time, Deputy Jailer Jennings noticed inmate Trevor Scott trying to pass contraband (what was believed to be marijuana) to another inmate. Jennings confiscated the contraband and revoked the inmates' access to the commissary. Shortly thereafter, while Jennings and another deputy, Deputy Brown, were ascertaining the nature of the contraband and reviewing video footage to determine which inmates were involved with it, Hernandez and another inmate, Beyersdorfer, attacked Scott.

The attack was captured on video from the pod's surveillance camera and Jennings' and Brown's body cameras. The surveillance camera footage depicts Hernandez and Beyersdorfer approaching Scott, pushing him to the ground, and kicking and striking him in full view of approximately nine other inmates witnessing the attack. Seconds later, five deputy jailers enter the pod and stop the attack, and Hernandez is handcuffed. The body cameras depict Jennings' and Brown's responses to the attack. The door to the pod is opened; there is shouting

from the inmates; Hernandez is standing over Scott, striking at him; Brown commands Hernandez to get on the ground; Hernandez strikes Scott again; Brown again commands Hernandez to get on the ground; Jennings repeatedly shouts that Hernandez had a weapon and had dropped it; and Brown puts Hernandez on the ground and places him in handcuffs.

To be clear, there is no dispute that Hernandez attacked Scott with a weapon during this incident. It was a shank fashioned from metal wire that apparently came from the head of a mop. And, as depicted in several post-incident photographs, it was strong and sharp enough to penetrate Scott's jumpsuit and thermal undergarments and inflict several superficial puncture wounds to the left side of Scott's back and arm.

As indicated, Hernandez was later charged with assault in the second degree, a class C felony offense that requires a five-to-ten-year term of imprisonment.[1] During the guilt phase of his trial, one of the witnesses who provided testimony was Sgt. Ray. Apart from detailing how she responded to and documented the incident, Ray testified that as a watch commander at the detention center, it was generally her duty to ensure the safety of both the inmates and the deputies; and, that while it was common to have fights break out in the detention center, fights involving weapons were uncommon.

---

[1] *See* KRS 532.020(1)(b).

During its closing arguments in the guilt phase, the Commonwealth reflected upon Sgt. Ray's testimony, stating in relevant part:

> Ladies and gentlemen, you heard Sgt. Ray. Fights at the jail happen all the time, they're not that big a deal. But it gets very serious very quickly when people start using homemade shanks like this. This is dangerous, and this time, yes, Trevor Scott may be fine. But this item could've done a lot worse, and we can't let this go unpunished.

Following deliberations, the jury found Hernandez guilty of assault in the second degree. Afterward, the trial entered the sentencing phase. And, during its opening remarks, the Commonwealth explained to the jury that they would be tasked with considering three overarching factors: first, Hernandez's conduct; second, his parole eligibility and credits; and lastly,

> The third thing I want you to think about, deterrence, is that this happened in the Kenton County Detention Center. And this crime might not have been all over the nightly news, but in the detention center it is a big deal. People hear about these incidents, they're aware. You saw in the video, obviously there were a bunch of inmates that witnessed this. There were a bunch of corrections officers that witnessed this. Those people talk. People are aware of what happened. Deterring future incidents at the Kenton Detention Center is a legitimate reason for punishment.

Following the opening remarks, there was a bench conference. There, Hernandez's counsel raised the issue that is currently the focus of this appeal:

> DEFENSE: [The Commonwealth] wants to put on a witness to say that it'll deter the community. There's

nothing in the rule, the rules, or the statute that says he can put on witnesses to say this'll be a deterrent in the community. I mean, making the argument's one thing, putting on witnesses is something different.

COMMONWEALTH: [KRS] 532.055 says "evidence may be offered by the Commonwealth relevant to sentencing, including," so it's not an exhaustive list. And, the case I've provided –

COURT: I've read it.

COMMONWEALTH: – makes it clear that is relevant, and so I think –

COURT: I think [Sgt. Ray] can talk about the community that you're talking about, that if they know that some behaviors are seen a certain way, that, so, but you gotta keep it really low, really minimum. So that's okay, I had a chance to read that.

In short, Hernandez's counsel believed it would be improper to permit a witness for the Commonwealth (Sgt. Ray) to reiterate what the Commonwealth had already related – without objection – through its opening remarks in the sentencing phase of the trial.

As indicated, Hernandez's objection was overruled.[2] With that in mind, we now turn to the substance of Sgt. Ray's offending testimony which, all told, lasted less than two minutes:

---

[2] Hernandez also objected on hearsay grounds to allowing Sgt. Ray to testify that his attack on Scott was generally known to inmates and corrections officers in Kenton County. His objection was sustained, and Sgt. Ray limited her testimony to what she was aware of. While Hernandez

-10-

COMMONWEALTH: Sgt. Ray, you mentioned before that fights are relatively common, but weapons being used in incidents are uncommon. What do you usually do when there's a fight? Is there a procedure, or is it taken through the criminal justice system?

RAY: No, usually it's more a disciplinary issue inside the jail.

COMMONWEALTH: Why do you treat it so differently when there's a weapon involved?

RAY: Because of the capabilities of which it could cause, the seriousness of a weapon being introduced into the facility or made within the facility.

COMMONWEALTH: Okay. Why is that a big deal to you?

RAY: Because if it's not made to be a big deal, it will continue. It will continue and then eventually someone is going to be seriously, seriously hurt.

. . .

COMMONWEALTH: You've informed other people at the Kenton County Detention Center about this case, correct?

RAY: Correct.

COMMONWEALTH: And, there were a number of inmates who witnessed this incident, correct?

RAY: That's correct.

---

makes light of his objection in his brief, he does not assert that Sgt. Ray's testimony ran afoul of any hearsay rules.

COMMONWEALTH: And, they may have shared this with other inmates that are there, correct?

RAY: Correct.

COMMONWEALTH: What is your concern if this is not punished harshly?

RAY: Again, since the inmate population is aware, that if it's not punished to a harsh extent, then what's to stop them from doing the same? What's to stop them from going from just fist-fighting to escalating to a weapon?

Following its sentencing deliberations, the jury recommended Hernandez be imprisoned for a term of seven years and six months, and the trial court sentenced him consistently with their recommendation. Now on appeal, Hernandez argues the trial court erred by overruling his objection to Sgt. Ray's testimony, as set forth above.

We disagree. As noted, Hernandez has never contested that deterrence is a relevant subject for a jury to consider for sentencing purposes, particularly in the context of cases involving inmates. *See, e.g.*, *Damron v. Commonwealth*, 687 S.W.2d 138, 140 (Ky. 1985) (approving an argument by the Commonwealth asking the jury to severely punish the defendant in order to send a message to the jails and prisons as to the consequences of escape, thereby deterring future escapes). Indeed, the Kentucky Supreme Court has explained:

> [S]o long as the jury is well aware that it is sentencing the particular defendant before it – with his or her good points and bad – on the crime for which he or she has

-12-

been convicted, there is no prejudice in the prosecutor commenting on the deterrent effect of that sentence.

. . .

[I]t is essentially illogical, at the sentencing phase, to say that the prosecutor cannot encourage the jury to impose a sentence that speaks to deterrence, as well as punishes the specific crime before it. Deterrence is clearly not intended for that defendant alone, but rather his sentence sends the message to all others so inclined that their crimes will be punished, and that a jury made up of local citizens will not tolerate such offenses. This is a significant part of the benefit of public trials. We continue, however, to disapprove of this argument at the guilt stage. And even at the penalty phase, the "send a message" argument shall be channeled down the narrow avenue of deterrence. Any effort by the prosecutor in his closing argument to shame jurors or attempt to put community pressure on jurors' decisions is strictly prohibited. Prosecutors may not argue that a lighter sentence will "send a message" to the community which will hold the jurors accountable or in a bad light.

*Cantrell v. Commonwealth*, 288 S.W.3d 291, 299 (Ky. 2009).

Also, Hernandez does not direct this Court to any Kentucky authority indicating that *evidence* supporting a deterrence argument is prohibited.[3] To the contrary, prosecutors have a duty to confine their arguments – including deterrence

---

[3] To be sure, Kentucky's truth-in-sentencing statute (*i.e.*, KRS 532.055(2)(a)) lists several categories of evidence that "may be offered by the Commonwealth relevant to sentencing[,]" and "deterrence" is not one of them. However, the list provided by that statute is illustrative, not exhaustive. *Cornelison v. Commonwealth*, 990 S.W.2d 609, 610 (Ky. 1999). It "does not exclude other possibly relevant evidence." *Garrison v. Commonwealth*, 338 S.W.3d 257, 260 (Ky. 2011).

-13-

arguments – to the facts in evidence and the reasonable inferences which can be derived therefrom. *See Caretenders, Inc. v. Commonwealth*, 821 S.W.2d 83, 89 (Ky. 1991) (citing *Wallen v. Commonwealth*, 657 S.W.2d 232, 234 (Ky. 1983)) (explaining a prosecutor may make arguments related to deterrence based on grounds or reasons reasonably inferred from the evidence).

Taken at face value, we perceive nothing about Ray's testimony that ventured beyond a narrow avenue of deterrence. To the extent that admitting Sgt. Ray's testimony qualified as error, however, it would be subject to the harmless error analysis under RCr[4] 9.24, which states we "must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." In *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009), it was noted that a non-constitutional error is harmless "if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." (citing *Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946)).

Here, we cannot say that any weight Sgt. Ray's relatively brief testimony may have lent to the Commonwealth's deterrence argument resulted in anything beyond harmless error or had the potential of rendering the sentencing phase of Hernandez's trial "fundamentally unfair" as Hernandez contends. In sum, Sgt. Ray stated that, compared to fistfights, fights involving weapons were

---

[4] Kentucky Rule of Criminal Procedure.

uncommon at the detention center – a point she had already testified about without objection during the guilt phase. She stated that, compared to fistfights, fights involving weapons had a higher likelihood of leading to serious injuries – a point the Commonwealth made without objection during its opening remarks, and which was largely an exercise in common sense. She stated that other inmates had witnessed the attack – which was apparent from the video footage of the incident that was repeatedly presented to the jury during the guilt phase. She stated the inmates who had witnessed the attack may have related what they witnessed to other inmates – a point reasonably inferable from the evidence and which, again, the Commonwealth had already related to the jurors. Lastly, just as the Commonwealth had already explained to the jury, Sgt. Ray explained why the use and manufacture of weapons in the detention center needed to be met with consequences: if not, it would continue and escalate. Lastly, the jury only recommended a sentence that was half-way between the minimum and maximum required for second-degree assault.

In other words, Sgt. Ray's testimony was largely cumulative of what the Commonwealth had already presented; and Hernandez's assertion that the jury was substantially swayed the jury's sentencing recommendation is at best speculative. Thus, we find nothing indicative of reversible error in this respect, either.

**CONCLUSION**

Hernandez has not identified any instance of reversible error. We therefore AFFIRM.


ALL CONCUR.


BRIEFS FOR APPELLANT:                    BRIEF FOR APPELLEE:

Erin Hoffman Yang                        Daniel Cameron
Frankfort, Kentucky                      Attorney General of Kentucky

                                         Kristin L. Conder
                                         Assistant Attorney General
                                         Frankfort, Kentucky